ARA SPENCE *vs.* JOHN P. ROBINS.—*E. S. June,* 1834.

The rules of law in relation to legacies make a distinction between such as are payable out of real, and such as are payable out of personal estate; and legacies, held to be vested and transmissible when payable out of the personal, will sink for the benefit of the heir or devisee, when charged on the real estate.

As, if a legacy is given to a legatee by words of immediate or present gift, but payable at a future period, as at the age of twenty-one, it is deemed a vested legacy; and if payable out of the personal estate will *not* lapse, though the legatee should die before the period arrives designated for its payment, but on his death will be transmitted to his personal representative; but if such a legacy be charged upon land, it will merge in the land for the benefit of the heir or devisee.

R, after devising to his wife a life-estate in his lands, further devised as follows: From and after her decease, I give the said estate to my youngest son, during his natural life; and from and immediately after his decease, the same to my said youngest son's first son, and the heirs male of his body, &c. And in case my said youngest son should die without leaving such heirs male, then to my said youngest son's daughter, &c. And in case my said youngest son should die without leaving, at the time of his death, either sons or daughters, or such issue as aforesaid of said sons or daughters, then I give and devise the said lands to my *eldest* son, and his heirs forever, on his paying my three daughters three dollars per acre for all the land lying, &c. The testator's youngest son died in infancy without issue. Upon a bill filed after the death of the youngest son, by the husband of one of the testator's daughters, for a portion of the three dollars per acre, *but in the life time of the testator's widow,* it was held that the bill was prematurely filed, and should be dismissed; that although the legacies were a charge upon the land, and became absolutely vested upon the death of the youngest son without issue, in the life-time of the daughters, still the devisee was not to pay the legacy before the land fell into his possession.

APPEAL from *Worcester* county court as a court of equity.

The appellant, on the 7th day of November, 1833, filed his bill on the equity side of *Worcester* county court, against the appellee, alleging that he, the appellant, in right of his wife, one of the daughters of *James B. Robins,* deceased, was entitled to a legacy of $2,000 under the will of her father.

The bill charged that the testator died in October, 1826, seized and possessed of a large real estate, which he de-

vised to his wife for life, and after her death to his youngest son, an infant, during his life-time, and after his death to his first son, in special tail male in strict settlement ; and if his said youngest son should die without leaving, at the time of his death, either sons or daughters, or issue of such sons or daughters, then that the said lands should pass to the appellee, (the eldest son of the testator,) his heirs and assigns, on his paying to the testator's three daughters, three dollars per acre for two thousand acres, being one-half of the estate devised. That the appellant's wife died in August, 1827, the testator's youngest son in March, 1831, in infancy, and without issue, male or female, whereby the estate vested in the appellee, charged with the payment of the aforesaid legacy, which the appellant is now entitled to have paid, notwithstanding the testator's widow, the tenant for life, is still living, and the prayer of the bill was that the appellee might be decreed to pay the appellant his proportion of the legacy, with interest, or that the land might be sold for the purpose of raising the necessary sum.

A copy of the will was exhibited with the bill, of which that portion which presented the question decided by this court, will be found in the opinion of the judge who pronounced the opinion.

The defendant demurred to this bill, and the county court passed a *pro forma* decree by consent, dimissing the bill without prejudice.

From this decree the complainant appealed to the court of Appeals.

The cause was argued before STEPHEN, ARCHER, and DORSEY, J's.

*Bullet* and *Page* for the appellant, cited

*Fearne,* 475, 480. 1 *Pr. Wms.* 663, 563. 3 *Akt.* 283. 2 *Durn. and East.* 143, 720. 7 *D. and East.* 589. *Fearne,* 548, 552, 550, 3, 4, 6. 3 *Pr. Wms.* 414, 132. 2 *Atk.* 616. 1 *Fonb.* 214. 1 *Ves.* 236. 1 *Bro. C. C.* 181. 1 *Pr. Wms.*

572. 1 *Ves.* 409. 3 *D. and East.* 88. 2 *Wil.* 29. *Cas. Temp. Tal.* 117. 1 *Bro. C. C.* 191, 119. 1 *Ves.* 44. 2 *Atk.* 127. 3 *Atk.* 319. 2 *Pr. Wms.* 612. *Ambl.* 575. 2 *Atk.* 507. *Pl. in Ch.* 27, 500. 1 *Pr. Wms.* 478. *Ambl.* 167, 230. 1 *Atk.* 573. 2 *Vern.* 484, 460.

*Martin* for the appellee, contended,

1st. That the sum of money claimed by the appellant under the will, being a charge on land (if a charge) is not such an interest as is transmissible to him; *Anna Maria,* his wife, having died before the contingency happened by the death of the youngest son of the testator without leaving issue at the time of his death.

2d. That, if the sum of money in question is transmissible to the appellant as the representative of his wife, that he is not entitled to have the same paid or raised until the death of Mrs. *Andasia Robins,* the wife of the testator, before which time the estate devised and charged as aforesaid, could not vest in the appellee *in possession,* and that the bill was premature.

3d. That although the devise of this estate to the appellee, on his paying a sum of money to the three daughters of the testator, makes a condition, it does not amount to a charge, and that therefore the decree below ought to be affirmed.

On the 1st point, cited *Ld. Tynham vs. Webb,* 2 *Vez. Sr.* 206. *Pawlet vs. Pawlet,* 1 *Vern.* 204, 321. *Yates vs. Fettyplace,* 2 *Ib.* 416. *Carter vs. Bleedsoe,* 2 *Ib.* 617. *Smith vs. Smith,* 2 *Ib.* 92. *Jennings vs. Looks,* 2 *P. Wms.* 29, 276. *Duke of Chandos vs. Ld. Talbot,* 2 *Ib.* 601, 613. *Sherman vs. Collins,* 3 *Atk.* 312. *Van vs. Clark,* 1 *Ib.* 510, *Attorney General vs. Milner,* 3 *Ib.* 112. *Hall vs. Tery, Ib.* 502. *King vs. Withers,* 3 *P. Wms.* 414. *Newton vs. Griffith,* 1 *Harr. and Gill,* 424, 425.

On the 2d point, *Clinton vs. Seymour,* 4 *Vez. Jr.* 440, 460. *Evelyn vs. Evelyn,* 2 *P. Wms.* 659. *Broom vs. Berkley,* 2 *Ib.* 484. *Hutchins vs. Foy, Comy. Rep.* 721, 725.

On the 3d point, *Bac. Abr., Tit. Cond., Let. B., Cok. Lit.* 236. (b) sec. 383. *Corwin vs. Ashley,* 4 *Bur.* 1929. *Willock vs. Hammond, Cro. Eliz.* 204.

STEPHEN, J., delivered the opinion of the court.

The question arising in this case is important and interesting to the parties, and the decision of it has been found not free from difficulty. It arises upon the construction to be given to the will of the late Judge *Robins,* in that part of it which contains the following devises and bequest. After giving to his wife a life estate in certain of his lands he devises the same in the following manner : " from and after her decease, I give and devise the said real estate and lands which I have herein before given to her during her natural life, to my youngest son during his natural life, and no longer ; and from and immediately after my said youngest son's decease, I give and devise the same to my said youngest son's first son, and the heirs male of his body begotten ; and in case my said son's first son should die without such issue male, as aforesaid, then I devise the same to my said son's second son, and the heirs male of his body begotten ; and in case my said son's second son should die without such male issue as aforesaid, then I give and devise the same lands last mentioned to my said son's third son, and the heirs male of his body ; and in case my said son's third son should die without such issue male as aforesaid, then I devise the said lands to my said son's fourth son, and his heirs male begotten forever, and so on, with like limitations as aforesaid, on the contingencies aforesaid, to my said son's fifth, sixth, or other sons. And in case my said youngest son should die without leaving such heirs male, then I give and devise the said lands last mentioned to my said youngest son's daughter or daughters, as tenants in common, if more than one, in special tail male to each daughter. And in case my said youngest son should die without leaving at the time of his death either sons or daughters, or such issue as aforesaid, of said sons or

daughters, then I give and devise the said lands to my eldest son, *John P. Robins*, and his heirs forever, on his paying my three daughters three dollars per acre for all the said lands lying on the west side of the county road, and excluding all mortgaged lands, adjoining said lands included in this devise which I may hold, it not being my intention to pass said mortgaged lands by this my will." In the discussion of this case, several questions have been raised by the solicitors for the parties, and argued with great legal learning and ability; but the most prominent and important one depends upon the character of the bequest to the daughters of the testator; that is to say, whether it was a legacy in its nature purely and absolutely contingent, or whether it vested prior to the happening of the contingency, so as to be transmissible to their representatives in case of their deaths or the deaths of either of them before the contingency happened. The decision of this question, and the principle involved it, particularly affects the complainant in this cause, whose wife departed this life before the contingency happened, upon which the contingent limitation to the testator's eldest son was, to take effect, according to the provisions of the will. The rules of law in relation to legacies, make, unquestionably, a distinction between such as are payable out of real, and such as are payable out of personal estate; and legacies which they hold to be vested and transmissible, when payable out of the latter, will sink for the benefit of the heir or devisee, when charged on the real estate, as if a legacy is given to a legatee by words of immediate or present gift, but payable at a future period, as at the age of twenty-one, it is deemed a vested legacy; and if payable out of the personal estate, will not lapse though the legatee should die before the period arrives designated for the payment of it, but on his death will be transmissible to the personal representative; but if such legacy be charged upon land, it will merge in the land for the benefit of the heir or devisee. This is the general rule, and it is applied in all cases where the time of pay-

ment is postponed on account of considerations having a personal reference to the legatee, unless it is controlled by some express provision of the will, or the manifest intention of the testator to the contrary, as where the legacy is payable at twenty-one or marriage, then if the legatee die before the age of maturity or marriage, the legacy sinks in the land, and will not be raised; for, in the language of the books, the law will not load or burthen the heir or devisee for the benefit of the executor. But the principle seems to be equally well established, particularly by the more modern authorities, that wherever it is apparent that the gift was not made immediate, but that the time of payment was postponed for the convenience of the estate, and not from considerations of a personal nature applicable to the legatee, the legacy shall not lapse, though the legatee should die before the contingency happens, upon the occurrence of which it is made payable. In such case it does not seem to be necessary, where the legacy is charged upon the land, that there should be express words of immediate gift to constitute the legacy so far vested as to make it transmissible; but that the legatee may acquire, without them, such an interest in the legacy as will go to the personal representative, and prevent its merger. It is true that, in many of the cases to be found in the books, the legacies have been charged upon vested remainders, and it has been said that the remainder being vested, the legacies charged upon them shall be deemed vested likewise: as, where an estate has been limited to A for life, remainder to B, and a legacy has been charged upon the remainder limited to B, there the legacy will be held to be vested, because the remainder upon which it is charged is vested. But it does not appear to be necessary that the legacy should absolutely vest in order to become transmissible in case of the death of the legatee before the contingency happens, upon which it is made payable. 2 *Fearne on Remainders*, 531, 532. The case of *King vs. Withers*, establishes the same principle, because the event upon which the additional

legacy was given to the daughter might never have happened, and yet the *Ld. Chancellor* determined, that it so far vested as to be transmissible upon the death of the daughter, before the contingency happened. *Cas. Temp. Talb.* 117. This is a case strikingly analogous to the present, and was strongly pressed upon the argument as decisive of the question in this case. That it establishes the principle that a possibility is transmissible, was the opinion of *Ld. Kenyon*, as may be seen in the opinion delivered by him in 3*d Term. R.* 94. In that case he quotes a decision, C. J. WILLE, where he says, " the question is, whether an executory devise be transmissible ? Most of the old cases which hold that they are not devisable, were before executory devises were well established. But that doctrine is now exploded. Executory devises are not naked possibilities, but are in the nature of contingent remainders ; and there is no doubt but that such estates are transmissible, and consequently devisable." *Ld. Kenyon* then uses the following language : " here then the chief justice gave a clear opinion that a possibility was devisable. That it is also transmissible, appears from the cases of *King vs. Withers*, and *Marks vs. Marks*, as establishing the same principle. It is also referred to in 2 *Fearn*, 531." In the same volume, 529, in treating of the qualities incident to executory devises, he says : " There still remains another property of executory devises to be taken notice of, which belongs to them in common with contingent remainders : what I mean is, that an executory interest, whether in real or personal estate, is transmissible to the representative of the devisee, when such devisee dies before the contingency happens ; and if not before disposed of, will vest in such representative when the contingency happens." As proving and illustrating this principle, he then refers to the cases of *Pinbury vs. Elkin*, and *King vs. Withers*. So in 1 *Wms. on Ex'rs.* 576, a very recent work, and one of established reputation, the case of *King vs. Withers* is also referred to as establishing the same principle. *Wil-*

*jiams*, in noticing the case of *King vs. Withers*, holds the following language: "In *King vs. Withers*, *Ld. Talbot* decreed that the legacy should be raised for the benefit of the administrator (the husband) of the daughter; and he held that though it did not absolutely vest, because it might never arise, yet it so far vested as to be transmissible to the representative. This decree was afterwards affirmed in the House of Lords." The case of *King vs. Withers*, as reported in 3 *P. Wms.* 414, contains the following facts: " *Charles Withers*, the father, was seized of a real estate of £900 per annum, and possessed of a great personal estate; and by his will, dated the 3d of June, 1697, duly executed, gave to his daughter, *Henrietta Maria*, £2,500 at her age of twenty-one, or marriage, which should first happen; declaring his intention and meaning to be, that if his son, *Charles Withers*, should die without issue male of his body then living, or which afterwards should be born, then his said daughter should have and receive at her age of twenty-one or marriage, which should first happen, £3,500 over and above the said £2,500. After which he entailed his real estate on the heirs of his body, with remainder to his brother, *Andrew Withers*, in fee; and directed, that in case the said contingency of his son's dying without issue male, should not happen before his daughter's age of twenty-one or marriage, then she should receive and be paid the said £3,500 whenever it might after happen; and made his wife, *Dorothy*, his brother, *Andrew Withers*, and one *John White* executors. Declaring further, that his land before mentioned in his will, should be liable and chargeable with the payment of this £3,500 whenever it might become due or payable." It is observed that in this case the legacy of £2,500 was given to the daughter at the age of twenty-one or marriage, it of course did not vest until the daughter arrived at the specified age or married. The additional legacy of £3,500 she was to have at the same period: it likewise never vested until one or other of the events of marriage or maturity occured;

for until then she had no right or capacity to take the legacy; if she had died before either event happened, her personal representative would not have been entitled to the legacy. See 2 *Williams on Executors*, 767, where he says, " if the words payable, or to be paid, are omitted, and the legacies are given at twenty-one ; or if, in case of, when, or provided, the legatees attain twenty-one, or any other future definite period, these expressions annex the time to the substance of the legacy, and make the legatee's right to it depend on his being alive at the time fixed for its payment, consequently if the legatee happens to die before that period arrives, his personal representative will not be entitled to the legacy. In the case, therefore, of *King vs. Withers*, there were two contingencies, and the daughter was not entitled to receive the legacy unless both had happened. She had no capacity to take until she married or attained the age of twenty-one. In the case now before this court, the capacity to take existed whenever the contingency happened. No event or contingency was mentioned, upon the happening of which such capacity depended. Whenever the youngest son died without leaving issue, as mentioned in the will, she had a right to demand and receive the legacy.

It is true, in the case before this court, there are no words of immediate gift to the daughter, nor were there in the case of *King vs. Withers*, as the case has been reported in *P. Wms.*, in reference to the additional legacy of £3,500. The reporter says, *Charles Withers* gave to his daughter, *Henrietta Maria*, £2,500 at her age of twenty-one or marriage, which should first happen, declaring his intention and meaning to be, that if his son, *Charles Withers*, should die without issue male of his body then living, or which afterwards should be born, then his said daughter should *have and receive*, at her age of twenty-one or marriage, which should first happen, £3,500 over and above the said £2,500." The will of judge *Robins* provides, that if his youngest son should die without leaving, at the time of his

death, certain specified issue, then the lands should go to his oldest son and his heirs, on his paying to his three daughters the legacy directed by the will. The fair import of the will seems to be, that upon the lands passing to *John P. Robins,* according to the limitations contained in the will, the daughters would be entitled to have and receive from him the legacies as specified, so soon as that event should occur by the failure of issue as stated. That is to say, the legacies would then become absolutely vested, and that upon the death of the testator, they acquired such an inchoate right or interest as was transmissible to their representatives, and would not merge in the land in case of their death before the contingency happened. *Fonblanque* 488, speaking upon the subject of legacies charged upon land, says: "Courts of equity, looking for the intent of the parties, are naturally influenced by a variety of prudential considerations, which cannot be brought within the range of any general rule. Where the time of payment is prescribed in reference to the person, the rule of the civil law, *causa data non secuten,* may be reasonably applied; but when the time of payment is postponed from the circumstances, not of the person, but of the fund, that rule cannot be applied without putting the general intent of the testator at hazard. To ascertain the real motive may be difficult; but whenever it can be ascertained that the time of payment was not made immediate, because it might overcharge the estate, it should seem to be too much to contend that the heir or devisee should have the further advantage of the possibility of the legatee's dying before the time of payment." In support of these principles he refers to a number of authorities, and among the number to the case of *King vs. Withers.* The devise of the land being to *John P. Robins,* on his paying the legacies, it seems to be clear that the testator intended to make them a charge on the land. To constitute such a charge, it is sufficient that lands are devised after payment of debts and legacies, or where lands are devised, debts and legacies

being first or previously paid. See 2 *Johns. Ch. Rep.* 623 But although the legacies are a charge upon the land, and would become absolutely vested upon the death of the youngest son, without leaving issue, as stated in the will, in the life-time of the daughters, yet there is nothing in the will which indicates the intention of the testator, that the devisee should be forced to pay the legacies before the land falls into his possession, and considering the amount of the legacies, to force a sale of the property pending the continuance of the life estates, would produce a loss of interest to which the devisee ought not to be subjected in the absence of such an intention expressly declared by the testator, or fairly to be inferred from the circumstances of the case. And it appears that in *England,* in the case of portions, the courts of equity are not disposed or inclined to sell reversionary interests for the purpose of raising them, where any other construction can reasonably be adopted. 1 *P. Wms.* 448, 709. 2 *P. Wms. Rep.* 24. *Fonb.* 487.

The bill, therefore, in this case has been prematurely filed, and ought to be dismissed.

BILL DISMISSED WITH COSTS.

## ERRATA.

In the case of *Sasscer vs. Young and Kemp*, page 247, after the 11th line, second paragraph, add, "If indeed the case was prior to the act of 1813, ch. 165."

In the case of the *State of Maryland vs. the Bank of Maryland*, page 225, in the third line, after the words 1650, ch. 28, introduce words, "they also revived the act of 1650, ch. 23."