# Terrence O'Byrne *vs.* Z. S. Clagett, Admr. of Ann Catharine O'Byrne.

A testator directed his real estate to be held by his wife, for the benefit of his children, until his eldest son attained twenty-one years of age. He then devised a farm to his eldest son, subject to bequests charged upon it. He then gave to his three daughters a legacy of $1000 each, "the interest on which shall be paid to them" by his said son "from his maturity until they shall respectively marry, or attain the age of twenty-one years, at which time, or within six months thereafter, he shall pay each, as she marries, or attains that age, the sum of $500, and the remaining $500 within eighteen months after her marriage, or maturity; and these sums and the interest" he charged upon the land given to his said son. Two of the daughters were *older* than the son, and the legacy to the younger was, by a subsequent clause, charged upon the land given to other sons. One of the older daughters died unmarried, and before she attained twenty-one. Held:

That this was a *vested* legacy, payable when the eldest son attained majority, in instalments, as directed by the will, the time of payment being postponed with reference to the ability of the real estate to pay the amounts charged upon it, and not to circumstances personal to the legatee.

To defeat a legacy payable out of real estate, where the legatee dies before the time of payment arrives, it must appear, from the nature and circumstances of the case, that the time of payment was made the substance of the gift, and that the testator meant that time as the period when the legacy should vest.

Appeal from the Equity Side of the Circuit Court for Washington county.

By the will of Dennis O'Byrne, who died in 1842, the testator directed that his real estate should remain in the possession of his wife, with power to manage it in her discretion, for her own support, and the education and maintenance of his children, until his son, Terrence, should attain the age of twenty-one years, unless his wife should sooner die, marry, or his executors should think the interests of his children required a separation from their mother, in either of which events they were directed to sell his stock, farming utensils, and furniture, hire out the negroes, rent out the lands, and apply the proceeds (after paying an annuity of $100 to his wife,) to the mutual and equal benefit, support and education of his chil-

dren. When his son, Terrence, attained twenty-one, he directed one-third of his personal estate, then to be sold, to go to his wife; and the balance to be equally divided among his children, and then devised as follows :

"I next give and bequeath to my eldest son, Terrence O'Byrne, all that tract of land, being part of 'King Cole,' on which I now reside, lying and being in Washington county, in the State of Maryland; to have and hold the same to himself, his heirs and assigns forever, subject to such bequests as are herein charged upon it." He next gives a negro man to Terrence, and then proceeds: "I next give and bequeath unto my daughters, Mary Jane, Ann Catharine, and Charlotte O'Byrne, each the sum of one thousand dollars, the interest on which shall be paid them by Terrence, my said son, from his maturity until they shall respectively marry, or attain the age of twenty-one years, at which times; or within six months thereafter, he shall pay to each, as she marries, or attains that age, the sum of five hundred dollars, and the remaining five hundred dollars within eighteen months after her marriage, or maturity, and these sums and the interest I charge upon the land given Terrence." He then devised his other tract of land to his other two sons, Thomas and Cunningham, and "upon further reflection," charged upon their lands, instead of Terrence's, the legacy of $1000 to his daughter, Charlotte, to be paid to her by them "in the same manner as it was to have been paid her by Terrence."

The testator left six children, born at the following dates: Mary Jane, in 1827; Ann Catharine, in 1828; Terrence, in 1830; Cunningham, in 1832; Charlotte, in 1834; and Thomas in 1839.

Terrence attained the age of twenty-one on the 11th of June 1851, Thomas died in 1842, and Ann Catharine also died on the 29th of June 1845, under the age of twenty-one, and unmarried, being older than her brother Terrence by nearly two years, and the bill in this case was filed by her administrator against Terrence, to enforce payment of the legacy of $1000, upon the ground that it *vested* immediately upon the death of the testator, and was, therefore, payable out

65    v.9

of the land upon which it was charged. The answer of Terrence insisted that the legacy was to be paid by him only in the event of Ann Catharine's marriage, or of her attaining the age of twenty-one, and that as she died unmarried, and before that age, the legacy was merged in the land for his benefit, as devisee thereof.

The facts above stated were admitted by agreement of counsel, and at the hearing the court below (PERRY, J.,) delivered the following opinion:

"I do not deem it necessary to refer to all the authorities adduced in the argument of this case, to show when a legacy, payable out of personal or real estate, is to be regarded as vested, or when it will merge for the benefit of the devisee or heir of the land, in the event of the death of the legatee before the period of payment arrives; as, by the law of Maryland, there can be no doubt that the 'rules in relation to legacies make a distinction between such as are payable out of real and personal estate; and legacies which they hold to be vested and transmissible, when payable out of the latter, will sink for the benefit of the heir or devisee, when charged on the real estate; as if a legacy by words of immediate gift, but payable at a future period, as at the age of twenty-one, it is deemed a vested legacy, and if payable out of the personal estate it will not lapse, though the legatee died before the period arrives designated for the payment of it, but, on his death, will be transmissible to the personal representatives; but if such legacy be charged upon land, it will merge in the land for the benefit of the heir or devisee. But the principle is equally well established, particularly by the more modern authorities, that whenever it is apparent that the gift was not made immediate, but that the time of payment was postponed for the convenience of the estate, and not from considerations of a personal nature, applicable to the legatee, the legacy shall not lapse, though the legatee should die before the contingency should happen, upon the occurrence of which it is made payable. And in such case it does not seem to be necessary, when the legacy is charged upon the land, that there should be express words of immediate gift to constitute the legacy so far vested as to make it trans-

missible; but the legatee may acquire, without them, such an interest in the legacy as will go to the representatives, and prevent its merger.' Such is the doctrine announced in the case of *Spence vs. Robins*, 6 *G. & J.*, 507. And, indeed, I find from an examination of the authorities, independent of this case, that these principles are so fully established that they must be regarded as unquestionably settled.

"With this view of the law, I have felt no difficulty in the case, except as to the meaning and proper construction of the will of the testator, as to the legacy given to his daughter, Ann Catharine.

"According to the case of *Spence vs. Robins*, the court is but to ascertain the intent of the testator, and, in doing so, must be naturally influenced by a variety of prudential considerations, which cannot be brought within the range of any general rule. When, and under what circumstances, courts have regarded the devise of a legacy charged upon real estate as lapsed, by the death of the legatee before the time appointed for payment, or as vested, in consequence of its being postponed by the testator for the convenience of the person, and the circumstances of the estate charged with the legacy, has been a matter of much perplexity and discussion. In the case of *Poole vs. Terry*, 6 *Eng. Ch. Rep.*, 133, the testator devised that his debts and testamentary expenses should be paid out of his personal estate; and in case that should be insufficient, then he gave his estates, called Bromely and Bluckenstone, to certain trustees, for five hundred years from the day of his decease, in trust, to raise such sums of money as the product of his personal estate might be deficient in, for discharging his debts and the legacies given by his will. And subject to the term, he devised his estate to his wife for her life, and after her decease he devised to his nephew the estates called Bromely and Bluckenstone, and his estate in the parish of King's Caple, in fee, and gave to his nieces, Hellen and Sarah, each £1000, to be paid to them by their brother, the aforesaid nephew, within twelve months after the decease of his wife, and charged his estates with the payments of those legacies. The vice-chancellor determined that the payment of those legacies was

a condition annexed to the benefits which the nephew was to take under the will, and that the intention was, that those legacies should not be paid until his nephew came into possession of the estates, and had the means of paying them, and consequently the payment was postponed on account of the circumstances of the estates, and the legacies of the testator to the nieces vested immediately on his death. In the case of *Harris vs. Fly*, 6 *Paige*, 421, the testator devised his farm to his son, subject to the life estate of his wife in part of the same, and then gave to each of his two daughters a legacy of $1000, to be paid by his son in six annual payments from the death of his mother, and made the son also his residuary devisee and legatee. One of the daughters was married, and there was nothing in the will to show that the other was an infant or an adult. It was insisted that, in consequence of the death of one of the daughters before the legacy became payable, at the time fixed and limited by the will, that the legacy to her became lapsed for the benefit of the devisee of the estate; but the chancellor decided, that there was nothing in the situation of the legatees, themselves, which required the postponement of the payment of the legacies, one of them having already married, and although the age of the other did not appear, probably she was not in her infancy, as no provision was made for her support during the life of her mother, and that the payment of those legacies was unquestionably postponed for the benefit of the son, and for the benefit of the estate devised to him. So in the case of *Sweet vs. Chase*, 2 *Comstock*, 73, a devise was made by which land was given to the testator's wife for life, or during her widowhood, and a legacy was given to be paid her, also, out of the avails of the sale of the land; and by a subsequent clause of the will, the executors were to sell such real estate, after her death, to pay the legacy. Under this will it was determined, that the legacy was vested upon the death of the testator, although not payable until after the death of the legatee, and went to her personal representatives. The court, regarding the circumstance of the devise to the widow for life, or widowhood, as sufficient to show that the payment of the legacy was postponed in reference to the situa-

tion of the estate out of which it was payable. See, also, *Roper on Legacies*, from 656 to 667, wherein many cases are collected to show when courts will regard a legacy charged upon land as vested, notwithstanding the postponement of its payment, and when it will be considered that such is the case on account of the condition of the estate.

"It has been conceded as a fact in this case, that the complainant's-intestate was older than Terrence, the devisee of the land. And the will shows that the testator gave his wife, for the benefit of herself and children, until her marriage, or the arrival of Terrence at the age of twenty-one, all his property, at which period, the land was to be the property of Terrence. He was required to pay interest upon the legacy when he arrived to his majority, and at that time he was to become entitled to the land; and then, upon their marriage, or attaining the age of twenty-one, of the legatees respectively, or within six months thereafter, he was to pay to each the sum of $500, and the remaining $500 he was to pay within eighteen months after their marriage, or maturity. The legatee being older than Terrence, indicates that the testator had in his mind the ulterior advantage of his son, and was influenced to delay the payment of the legacy to such times as he, the son, could have been enabled to pay it. It is true, there is nothing to show that the postponement was occasioned on account of any circumstance, such as want of mind, or infancy, in the legatee. But should we not, therefore, look for other motives to influence the testator? And nothing is more likely than that such as would benefit the son, (the devisee of the land.)

"That feature of the will which has been the cause of difficulty in reconciling me to the views I entertain of the case, is one which was mentioned in the argument. By the agreement of the solicitors, it appears that Ann, the complainant's intestate, was older than Terrence, and, of course, would arrive at the age of twenty-one before him, and before he was to have the land. And yet the will provides, that upon the arrival of the daughters at the age of twenty-one, or their marriage, they were to receive the legacy given to them; such being the language of the will, the construction might be, that

the payment was not postponed in reference to the condition of the estate; because, if the payment was to be made at her age of twenty-one, and while he (Terrence) was in his minority, the conclusion might follow, as a necessary consequence, that such was not contemplated by the testator. But this difficulty is removed by considering all the parts of the will, and arriving at the meaning by that which appears to be his general, reasonable, and plain intention. And though particular sentences may be seemingly irreconcilable, if such general intent can be accomplished, it should be done. See *Bowly vs. Lammot*, 3 *H. & J.*, 4. *Lyles vs. Diggs*, 6 *H. & J.*, 364. *Dashiel vs. Dashiel*, 2 *H. & G.*, 129. 1 *Jarman on Wills*, 411, and *note* (1.)

"The testator having given his entire estate to his wife during her widowhood, and the minority of Terrence, except a right of sale, at the discretion of his executors, in a certain event, and under no circumstances leaving means in the hands of Terrence, or any person whatsoever for him, to pay this legacy, is it natural to suppose he intended a bounty surrounded with such difficulties? The legatee certainly could not make Terrence personally responsible before his majority. He was not to take possession of his estate until that period, and he was incapacitated, while in infancy, from assuming such liability, and to determine it to be due at that time, would impute to the testator a very unreasonable design, as such a condition of the legacy would leave his daughter no hopes of payment, except it be by the interposition of a court of equity to enforce it by a sale of the land upon which it is charged, and impose upon the land given to his son a burthen which would greatly impair its value, and involve the property with a debt when he could not protect it. The payment of interest is not from the time of the majority of the daughter, but from that of the son, and the payment of the legacies, one-half when they (the daughters) arrive at the age of twenty-one, or marry, and the balance in eighteen months thereafter, was, no doubt, intended to provide for the payment of the legacies to such of his daughters as should thereafter marry, or were under the age of twenty-one, as the will provides that each of the lega-

tees should be paid by Terrence. That interest was to be paid from his majority, and, as I see, from all its provisions, an evident design that Terrence was to pay when he had the estate, and that such payment was postponed to that period, I will gratify the general intention of the testator, and disregard the seeming difficulty which arises from the age of Ann.

"The payment of interest on the legacy is not such a circumstance as will show the testator intended it should vest in the legatee before the period of its payment, it being a legacy charged upon land. See 11 *Wend.*, 273, *Paterson vs. Ellis.* The case of *Lemonnier vs. Godfroid*, 6 *H. & J.*, 472, is not like this, as the legacy was not charged upon real, but was payable out of personal estate. I do not, however, feel at liberty to discard such a provision in this will. It serves, with the other parts of that instrument, to reflect its meaning as to the time at which the payment of the legacy was to be made, imposing upon Terrence the obligation to pay interest upon all the legacies after his arrival at the age of twenty-one, with the other facts found in it, is calculated to induce the belief that the testator did not design his infant son, Terrence, should be required to pay a legacy of that magnitude when he had not provided him with the means; and when to have given the daughter a right to it, she having arrived at the age of twenty-one, would have been only a mode of inviting that daughter, if she chose, to assert her rights in a court of equity, to have that sold which he intended should be possessed by an object of his bounty. Such being my views of the law, and the intention of this will, I feel myself called upon to pass a decree in conformity therewith."

From the decree so passed, the defendant appealed.

The cause was argued before LEGRAND, C. J., TUCK and MASON, J.

*William Motter* for the appellant, argued:

1st. That by construction of law the words of the bequest mean, that upon the death of Ann Catharine, unmarried, and before she attained twenty-one years of age, her legacy should

sink into the land for the benefit of the appellant, the devisee thereof.

There is a distinction between legacies payable out of real and out of personal estate. 6 *G. & J.*, 507, *Spence vs. Robins.* In regard to legacies charged upon lands the rule is, that if the legatee die before the time limited for the payment of the legacy, in such case, as against the heir or devisee, the legacy ceases, but if the payment of the legacy be postponed for the convenience of the estate charged, *and not* in respect of the legatee, the legacy may be payable, notwithstanding the death of the legatee before the time of payment. 2 *Wms. Exc'rs,* 1076. *Ward on Legacies.* 18 *Law Lib.*, 172 to 186. *Ram. on Assets,* 8 *Law Lib.*, 127 to 129. 39 *Law Lib.*, 314 to 317. The reason of the rule is, the danger of unsettling property by departing from the precedents established by concurrent jurisdictions. 3 *Ves.*, 135, *Pearce vs. Loman.* *Ibid,* 98, *Stackpole vs. Beaumont.* *Ibid.*, 317, *Holmes vs. Cradock.* *Ibid.*, 613, *Phipps vs. Ld. Mulgrave.* 2 *Shep. Touch.*, 453. 3 *Atk.*, 112, *Att'y General vs. Milner.* 2 *Peere Wms.*, 610, *Duke of Chandos vs. Talbot.* *Fearne,* 552, note *(g.)* 2 *Powell on Devises,* 22 *Law Lib.*, 234. 2 *Thos. Coke,* 19, note *(k.)* 2 *Peere Wms.*, 276, *Jennings vs. Looks.* 3 *Do.*, 414, *King vs. Withers.* This is a case of a portion given to a child. In such cases, where the legacy is to be paid at a certain age or ,marriage, the court concludes, that the parent thought that if the child did not arrive at the age or marry, it would not want the legacy. The rule before mentioned is so rigid, that when a legacy is payable, part out of personal and part of real estate, it is vested as respects the personal and sinks as to the real estate. The rule that the legacy vests when the payment is postponed from considerations, having reference to the estate charged, is restricted to a postponement from such considerations *alone,* as will be seen from the aforegoing authorities. The uniform language is substantially "for the convenience of the estate, *and not in respect of the person of the legatee.*" In *Spence vs. Robins,* the payment of the legacy was a condition annexed to the devise, upon compliance with which depended the devisee's right to the land. So in

the case of *Snively vs. Beavans.* The rule, from the foregoing authorities, seems to be arbitrary, unless there be an expressed intention to the contrary in the will, that when the legatee is to take, upon majority or marriage, in that case a legacy charged upon lands sinks.

2nd. That such was the *intention* of the testator, from a fair and proper construction of the language of the will, looking to the condition and ages of his children.

By no other construction can the court give effect to all the words of the will which the law requires. 8 *G. & J.*, 441, *Hammond vs. Hammond. Ram. on Wills,* 8 *Law Lib.,* 98, 100. 2 *Ves.*, 321, *Holmes vs. Cradock.* 7 *Md. Rep.*, 8, *Douglas vs. Blackford.* The testator, it is to be presumed, was acquainted with the ages of his children. Mary Jane and Ann Catharine were both older than Terrence. Unless, therefore, the testator intended that each of their legacies should be payable only in the event of their respective marriages, or attainment of twenty-one years of age, the insertion of the words, "he shall pay to each as she attains that age," is senseless and a nullity. The plain and necessary meaning of the language must be, that neither Mary Jane nor Ann Catharine was to receive her legacy unless she married or attained twenty-one. And the postponement of the payments, in the true sense of the rule, was with reference to the legatees; and rested upon two contingencies, one or the other of which must necessarily happen before either could take, viz., her marriage *or* maturity. The time given to Terrence to pay, viz., on his arrival at twenty-one, was with reference to the happening of but one of the contingencies—marriage—and which might take place before he came into possession of the estate, in which event Terrence was not to pay until he came into possession. The fact that he was not to be burthened until he came into possession, upon the happening of one of the contingencies, affords no reason to suppose the intention of the testator to be that he should pay at all events, though neither contingency upon which the legatees were to take should ever happen. The foregoing construction of the language of the will is the only one admissible, in order to reconcile an apparent

inconsistency in the language of the testator. This construction also stands with all the other facts of the case. Charlotte, whose legacy was first charged upon the lands of Terrence, was his junior by over four years. With reference to her, therefore, there was no necessity, in order to relieve Terrence of a burthen before he came into possession, of giving him time to pay until he arrived at twenty-one with respect to the contingency of *her* attaining twenty-one, for by the time *she* attained that age upon which alone she could take, unless she had previously married, he would have over four years in which to pay her the principal of her legacy. The court will observe, that Terrence was not to pay at or within six months after *"his maturity,"* but at or within six months *after the marriage or arrival at twenty-one of each of the legatees,* but not before his *maturity.* Looking, then, to the language of the will and the ages of the children, it is manifest that the intention of the testator was, that Terrence was only to pay upon the happening of one or the other of these contingencies, and this intention brings the case within the rule, that the payment was postponed with reference to the legatee.

*Z. S. Clagett* for the appellee, argued:

That the legacy to Ann Catharine *vested* immediately upon the death of the testator, prior to the happening of the contingency, and was therefore transmissible to her personal representatives. It is a gift *in presenti,* to be enjoyed in *futuro.* The law favors the vesting of legacies, and unless it clearly appears from the will that the time of payment is made the substance of the gift, the courts adjudge the legacy to be vested, regarding the time of payment as a description of the period merely when the legatee is to take in possession. The future time here has reference to the payment, not to the vesting of the legacy. The age is annexed to the time of payment, and not to the gift of the legacy: 2 *Wms. Exc'rs,* 1054. 1 *Md. Rep.,* 222, *Snively vs. Beavans.* Courts of equity have established certain rules of construction by which the intention of the testator is ascertained, one of which—and a positive rule—is, that a bequest to a person, payable, or to

be paid, at or when he shall attain twenty-one, or at the end of any other certain determinate term, confers on him a vested interest immediately on the testator's death, as *debitum in presenti solvendum in futuro*, and transmissible to his executors or administrators; for the words "payable," or "to be paid," are supposed to disannex the time from the gift of the legacy, so as to leave the gift immediate in respect of its vesting, as if the bequest stood singly and contained no mention of time. 6 *G. & J.*, 507, 512, *Spence vs. Robins.* 1 *Md. Rep.*, 208, *Snively vs. Beavans.* 2 *Fearne*, 229. 2 *Wms. Exc'rs*, 1051, 1052. · This case comes clearly within this rule. The testator gives the legacy of $1000, and directs that "the interest on which shall be paid by Terrence from his maturity," and further directs, that the principal shall be paid by him at certain designated periods.

Again, the intention of the testator to vest the legacy immediately is evidenced by his giving *interest.* He gives to Ann Catharine a share of the rents in lieu of interest, but as soon as Terrence attains twenty-one he is to pay interest on the legacy. The courts consider the disposition of the interest to indicate an intention on the part of the testator that the legatee should, at all events, have the principal. 2 *Wms. Exc'rs*, 1035, *note*, 1060. *Fearne*, 553, *note.* 11 *Wend.*, 259, *Patterson vs. Ellis.* 6 *H. & J.*, 472, *Lemonnier vs. Godfroid. Worthington on Wills*, 100, *note.* 3 *Atk.*, 644, *Fonereau vs. Fonereau.*

It is conceded there is a distinction between a legacy payable out of personal estate and one charged upon land. The latter is, however, always liable to the operation of the more general rule, that the intention of the testator, to be gathered from the words of the will, must prevail. 2 *Wms. Exc'rs*, 1078. If, therefore, the courts can gather from the will that the payment of the legacy is postponed for the convenience of the fund or property, the vesting will not be deferred. 3 *Humph.*, 255, *Hartsell vs. George.* 6 *Yerger*, 227, *Harris vs. Clarissa.* 6 *G. & J.*, 512. 2 *Sim. & Stu.*, 199, *Watkins vs. Cheek.* 1 *Ves., Sen.*, 44, *Hodgson vs. Rawson.* 1 *Brown's Ch. Cases*, 134, *note. Jarman on Wills*, 763. *Ward on Legacies*, 177, 178. 2 *Wms. Exc'rs*, 1068. 6 *Eng. Ch.*

*Rep.*, 133, *Poole vs. Terry.* 7 *Paige*, 421, *Harris vs. Fly.*
Was not the payment of this legacy postponed by the testator
for the convenience of the estate? It was so postponed, not
only for the convenience of the estate, but also from consider-
ations of a personal nature applicable to Terrence. He was
not to have the land in possession until he attained twenty-
one. Till then the land is held in common. Why is that
period designated? It shows that the testator was influenced
by personal considerations applicable to Terrence, and that he
fixed that period for *his* benefit and convenience. Though
the testator directs payment of the legacies within six months
after the marriage of his daughters, or their majority, yet this
is in conflict with the general and predominating intention to
be collected from the whole will. It is evident he meant the
legacies to be paid only *after* Terrence arrived at twenty-one;
because he could not expect him to pay them during his
minority, and a different construction would make them pay-
able long before Terrence attained that age. This intention
is further manifested, from the fact that he directs that Ter-
rence shall have and possess this farm when he attained that
age. How could this intention be effectuated, if his estate
were sold by the legatees long before he attained that age to
pay their legacies?

Again, the intention that he should pay the legacies only
*after* he attained majority, is manifest from the fact that he is
to pay interest only from his majority. Why pay interest from
his majority when the principal is due and payable long before?
This construction is also further manifest, from the fact that
the *three* legacies were each charged on the land devised to
Terrence, but the one to Charlotte was subsequently changed,
and charged on the land devised to Cunningham and Thomas.
Charlotte was *younger* than Terrence and Cunningham.
Suppose the testator had not changed this legacy, and Char-
lotte's administrator was also suing for her legacy, would the
court construe hers to be vested and that of Ann Catharine to
be lapsed, or would both be adjudged to be vested? Yet the
payment of the legacy to Charlotte was clearly postponed for
the convenience of the estate—to prevent it from being over-

DECEMBER TERM, 1856.          525

O'Byrne vs. O'Byrne's Adm'r.

charged—because it would not be payable for four years after Terrence attained twenty-one.

It is submitted, then, that from the whole will taken together the intention of the testator was, that Terrence should pay these legacies only *after* he attained twenty-one, and if such was the intention, it is clear the payment was postponed for the convenience of the estate and for the benefit of Terrence, and that the legacy should not lapse, though the legatee died before the contingency happened, upon the occurrence of which it was made payable. The cases of *Spence vs. Robins,* and *Snively vs. Beavans,* contain the general principle of law governing this case.

Tuck, J., delivered the opinion of this court.

We are of opinion, that the present appeal must be determined according to the doctrines set forth in the cases of *Spence vs. Robins,* 6 *G. & J.,* 507, and *Snively vs. Beavans,* 1 *Md. Rep.,* 208, according to which, to defeat bequests of this kind, it must appear, from the nature and circumstances of the case, that the time of payment was made the substance of the gift, and that the testator meant that time as the period when the legacy should vest. Our only office, therefore, is to ascertain whether, by this will, the testator postponed the satisfaction of the legacy on account of the circumstances of the legatee, or of the estate, out of which it was to be paid.

There is some obscurity in the language of the will as to the time when this legacy and the interest thereon became payable, but looking to the whole instrument, and construing it with reference to its general intent, we think the court below decided correctly that the amount charged upon the land became due at the majority of the appellant, subject, however, to his right to pay in instalments, as provided in the will. It cannot be assumed that the testator designed to have made distinctions among his children, by giving to the sons a larger interest in his estate than to the daughters. It does not appear but that the lands were worth less, at the time, than the amounts charged upon them. Certainly the contrary does not appear. It is more reasonable to suppose that he designed

to benefit them all alike. They were all young and incapable of managing property. Consequently the testator directed his whole estate to be kept together for their support and education, under the care and management of their mother, or to be otherwise devoted to their common benefit, as provided in the will, on the occurrence of the events mentioned therein. If, instead of this provision for his family, he had not deferred the payment of the legacies to the arrival at age of the appellant, but had required them to be paid to the daughters, on their marriage or arrival at age, for reasons, as is contended, personal to the legatees, the land devised to this son might have been sold for their satisfaction, to the great injury of the devisee, by reason of his inability to provide for their payment. It was to prevent this that the time was postponed until his majority; and even then the legacies were to be paid, not immediately, but in instalments, so as to relieve the devisee from what might have proved too heavy a burden for his estate, if each legacy had been wholly demandable at any given period.

Believing that these provisions of the will were made with reference to the ability of the real estate to pay the amounts charged, and not to circumstances personal to the daughters, we affirm the decree.

*Decree affirmed with costs.*