*Miller, J.,
delivered the opinion of the court.
The first inquiry in this case is, did Mrs. Imogene Tayloe, the mother of the complainant, take, under the will of her grand-father, James Mosher, any interest transmissible to her son? Upon the answer to this question depends the complainant’s right to any relief; and it must be decided, because we are of opinion if his mother did take such interest, he is entitled to a part of the relief prayed in his bill.
By this will, executed in February, 1840, the testator, subject to the devises, bequests and dispositions in favor of his wife and his servants, gave and devised the whole of his estate, real, personal and mixed, not otherwise specifically disposed of, to two trustees, in trust for the purposes thereafter declared in his will, with power of leasing his real estate during the continuance of the trust. He then directs the trustees to pay certain annuities to the grand-children of his wife by a former marriage, to his niece, and for the support of the family of his son William and his wife, in case she survived him without a child; and then the will proceeds thus:
“ I will and desire that the clear income of my estate, if anything remain after the application annually or otherwise, of the several sums of money hereinbefore charged thereon, shall be invested in such manner as my trustees or the survivor of them shall think proper, and so on from time time, until a final distribution of my estate be made as hereinafter directed. Upon the death of my son William, I will and desire that a distribution of my estate be made among all my grand-children, to wit: *450 the children of my late son James Mosher, and the children qf my afqresaid son William, provided any child he shall leave. All my said grand-children to take per capita; reserving, however, in the hands of said trustees, for future distribution, if necessary, so much of my estate as will be sufficient to countervail and pay the several annuities or sums of money herein-before provided for, to the several annuitants or persons hereinbefore named, until the *same shall have ceased, -when a final distribution shall be made in manner aforesaidwith power to the trustees to make any sale, disposition or deed of his estate and property that may be requisite and proper for making such final distribution, and otherwise carrying into full effect the provisions of his will. Several codicils were subsequently executed merely increasing the amount of the provisions for his wife and the other annuitants, but furnishing no aid in the construction of this clause of the will.
At the date of the will, and at the death of the testator in March, 1845, he had and left three grand-children, the children of his deceased son James, viz: Imogene, Eliza and Theodore, the first of whom married John Tayloe, and died in August, 1846, leaving the complainant her only child and heir-at-law, and her husband surviving her. The testator’s son William, who is still living, has never had any issue. The question thus presented is, did the grand-children in esse at the death of the testator take under this will vested interests in the corpus of the estate and its accumulations, or was the vesting in interest postponed to the period of William’s death, leaving the whole to be distributed to those grand-children only who should be then living ?
It is very difficult, in any case, to gather the intention of a testator from the language employed in the will, where events have occurred which probably were not in his contemplation when the will was executed, and the present case is surrounded with more than usual embarrassment and doubt. The intention is certainly, in every case, the object of ascertainment; but, wherever there is doubt and difficult}'-, the courts must resort for aid to settled rules of construction. The most important of these, and indeed, the only one which seems to be general, definite and fixed, is that the law favors the vesting of estates, and where words of futurity are employed they are not to be *452 regarded as importing contingency or as postponing the period of vesting, if they point merely to deferred possession or enjoyment. *This rule has been adopted to uphold testamentary dispositions of property, and to prevent intestacy. It is especially applicable to a devise or bequest like the present, of a residue, and is founded on the reasonable presumption that every man who deliberately makes a will in which he professes to dispose of his whole estate, does not intend to leave any portion of his property in such a condition as not to pass under the will. “ One does not like,” says Vice Chancellor Shadwell, in Lett v. Randall, 10 Simons, 112, “to construe a will so as to make the testator die intestate, unless it is impossible so to construe it as to give effect to what may be fairly collected to have been his intention.”
The argument against the vesting has been presented with much ability and force of reasoning, by the appellees’ counsel. It is said this is a devise to trustees to pay and transfer, at a future period, to a class of individuals with provision, that the income shall, in the meantime, accumulate; that no previous mention is made of the grand-children in any other clause of the will; that no part of the income, or of the interest of the invested accumulations is given them for support 'and maintenance before the period of distribution shall arrive; that there is no limitation over, and no provision made for issue or survivorship of individuals of the class specified; that there is no antecedent gift of which the enjoyment could be postponed, and the only gift being in the direction to pay and distribute, it can only attach to those who may come within the description of the class at the period of distribution, when the gift takes effect; that this intention is made more manifest from the fact that, as to the children of William, the devise is clearly contingent upon the event of such child or children surviving their father by force of the words, “provided any child he shall leave ” and where an estate is made contingent as to one of a class, it must be so construed as to all.
But it makes no difference, as to the vesting, whether the legal estate be devised to trustees who are required to convey *according to the directions of the will, or whether the interest is provided to take effect without the intervention of trustees, nor that the trust provides for the accumulation of in *453 come until the period of payment or distribution arrives. These propositions are settled by numerous authorities in England, as well as by the recent decisions of this court. Phipps v. Ackers, 9 Clark & Finnelly, 583; Waters v. Waters, 24 Md. 430; Meyer v. Eisler, ante, p. 28. In Leake v. Robinson, 2 Meriv. 362, there were, in different parts of the will, different expressions directing payment by the trustees, in some instances to such child or children as shall attain twenty-five, in others, upon attainment of the age of twenty-five, and in the residuary clause, the trustees were to transfer the property from, and immediately after such child or children shall attain the age of twenty-five. It was there held that the testator, in each instance, meant precisely the same thing, and that none of the several classes of children took vested interests before the specified period, and in so deciding, the Master of the Rolls, Sir William Grant, laid much stress upon the fact that there was no direct gift to any of the classes mentioned except in the direction to pay and transfer. But this case, and others, in which similar reliance has been placed upon this circumstance, have been thoroughly reviewed by Vice-Chancellor Wigram, in Leeming v. Sharratt, 2 Hare, 14, who conclusively shows that the mere fact that the gift is future, and made solely under the form of a direction to pay or transfer, does not furnish a simple rule of decision for all cases; that these are circumstances to be considered in arriving at the intention, but certainly not conclusive. “ The question,” says the Vice-Chancellor, “ in all the cases has been, whether the testator intended it a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will, and not in particular expressions only,” and he adopts tire general rule as stated by Lord Loughborough in Monkhouse *v. Holme, 1 Bro. Ch. 298: “If the day is certain, it is vested, but where uncertain, the question will be, whether it is in the nature of a condition, for if it is conditional, then in the very nature of the thing, the time is annexed to the substance of the gift, as in the case of marriage, of puberty, or of any other situation in life, when thé arrival of the time is a condition, without which the testator would not have made the giftand by the Master of the Rolls, in May v. Wood, 3 Bro. Ch. 473: “All *454 the cases establish this principle, that where the time is mentioned as referring to the legacy itself, unless it appears to have been fixed by the testator as absolutely necessary to have arrived before any part of his bounty can attach to the legatee, the legacy attaches immediately, and the time of payment is merely postponed, not being annexed to the substance of the gift; but, if it appears that the testator intended it as a condition precedent upon which the legacy must take place, then, if such condition or contingency does not happen, the gift never arises.” One of the provisions of the will construed in Leeming v. Sharratt, supra, was a gift of a residue of real and personal estate to trustees to sell and divide the money unto and equally among all the testator’s children, so soon as the youngest should attain twenty-one; and in case of the death of any child leaving lawful issue, such issue to have the part or share the parent so dying would have been entitled to have, and it was held that the legacy was vested, and that the share of a child, who died without issue before the youngest child attained twenty-one, the time of division, passed to his representatives.
Two subsequent decisions, Mower v. Walker, 16 Beav. 365, and Chance v. Chance, 16 Beav. 572, have been strongly pressed upon our attention. In the first, there was a devise and bequest of real and personal estate to trustees, in trust for A. for life, and after her death to convey and assign the same unto, and equally between all and every, the child and children of A., “ on their respectively attaining tzventy-one years of age,” with a gift over in case of A.’s death, leaving no child *surviving her; and it was held that A.’s child, who survived her, and died before attaining twenty-two, did not take a vested interest, and that the gift over failed. In the second, the testatrix appointed a trust fund to two trustees, in trust, to pay the dividends to A. for life, and after his death, she gave the dividends to B. and C. for life, and after the death of the survivor, she directed the principal to be divided into two parts, and to be transferred or paid unto, and equally divided between, “all the children” of B. and C. respectively, “at the age of twenty-five years;” and it was held the legacies did not vest until the period of payment, and as that period violated the rule as to remoteness, the gifts were void. These decisions were made by Sir J. Romily, Master of the Rolls, and in each of *455 them he adverts to, and relies upon, the fact that there was no gift except in the direction to pay at twenty-five, and brings them within the authorities which hold, that where there “is a gift made to a class on condition of their filling a particular character, it can only vest in case that condition is satisfied,” thus making the attainment of a specified age the same thing as filling a particular character. W°e need not stop to consider how far these decisions conflict with Boraston’s Case, 3 Coke, 19, because we do not regard them as overruling or shaking the well considered case of Leeming v. Sharratt, supra, or as governing the case at bar. The direction here is not to distribute to the grand-cliildren at or upon their attaining any particular age, nor upon their filling any particular character, such as marriage or attain puberty, but it is simply to distribute the estate to all the testator’s grand-children upon the death of his son William, an event certain to occur. In this respect the case is not distinguishable from that of Leeming v. Sharratt, and we must consider the rule adopted, or the fact relied on in some of the cases, that there is no vesting where there is no gift save in the direction to pay or distribute at a future period, as subordinated to others of paramount force, and especially to the general rule that if the time of payment or distribution appears to be postponed *for the convenience of the fund or property, the vesting will not be deferred until that period. 1 Jarman on Wills, 764.
Nor is the rule that any provision in regard tó a particular member of a class affecting or defining the time of vesting, or tending to determine whether the estate was intended to be contingent or vested, should be applied to all the members of the class, a rule of universal force and application. In ordinary cases, and in the absence of any other guide to the intent, it would be a circumstance of controlling weight, but each will depend for its construction, in a great measure, upon its own peculiar language, phraseology and circumstances. The testator here directs a distribution of his estate to be made among all his grand-children, to wit: the children of his late son James, and the children of his son William, provided any child he shall leave. It is doing no violence to this language or to any rule of law, to hold that the children of James, who were in esse -at the date of the will and of the testator’s death, took *456 vested interests, liable to be divested pro imito for the purpose of letting in for a share any child that William, who then had none, might, by possibility, have and leave surviving him. The fact that an estate is liable to be divested in whole or in part upon a contingency, does not make it a contingent estate. The natural reading of the sentence obviously points to this as the testator’s intent. He evidently regarded the prospect of William’s having a child rather as possible than probable, as is apparent from the terms provided any child he shall leave,” and from the provision in the previous part of the will for William’s wife, in the event of her surviving him “ without a child.” We cannot come to the conclusion from this language and these provisions, that he intended to make no distinction, as to the vesting of their interests in the estate between the living children of his deceased son whom he knew and whose numbers could not be increased, and any possible child William might have and leave. The following expression, “ all my grand-children to take per capita” was evidently inserted from abundant caution, for the purpose of ^preventing any single child William might leave, from taking as much as the three of James, and to make perfect equality of distribution, constituting each grand-child a stirps from whom descent as to his or her portion should be derived. Looking to the whole will, we gather such to have been the testator’s intention. His grandchildren were the primary and principal objects of his bounty. He gives to them the great bulk of his property real and personal, but postpones the period of enjoyment in possession, until William’s death. Several annuities were charged on the property, and to meet and pay these the estate was placed in the hands of trustees with directions to accumulate the surplus income if any. A provision was made for the support of William’s family during his life, and this was another reason for postponing the period of distribution until his death. For these reasons, and for the convenience of the estate in reference to its ability to pay the prior charges and annuities, and not for anything personal to the devisees and legatees of the residue, the period of distribution was postponed. Regarding all the provisions of the will, it is impossible for us to reach the conclusion the testator meant, after providing carefully for an equal distribution to all, that his whole estate should' go to *457 a single grand-child who might survive William, and nothing to the descendants of those who might die before William, leaving issue, or that he intended to die intestate of this residue, the great bulk of his property, in case no grand-child should be living at the period of William’s death. The case is not distinguishable in principle from those of Waters v. Waters and Meyer v. Eisler, supra, recently decided by this court, and we cannot decide against the vesting here without overruling or greatly weakening the authority of those cases, and others in which the Court of Appeals have announced, in the broadest terms, the general rule that the law favors the vesting of estates and to make an estate contingent, it must appear from the language used and the nature and circumstances of the case, that -the time of payment was made the substance of the gift, and that *the testator meant that time as the period of vesting. Spence v. Robins, 6 G. & J. 507; Snively v. Beavans, 1 Md. 208; O’Byrne v. O’Byrne, 9 Md. 512; Fenby v. Johnson, 21 Md. 106. Such also is clearly the tendency of all the tnore recent decisions, both in England and in this country. Poor v. Considine, 6 Wallace, 458. Estates will be 'held to be vested wherever it can fairly be done without doing violence to the language of the will, and to make them contingent there must be plain expressions to that effect, or such intent must be so plainly inferable from the terms used to leave no room for construction. We are, therefore, of opinion, the children of James Mosher, deceased, the grand-children of the testator, took under this will vested interests in the corpus of the estate, with its accumulations, liable to be divested to the extent of letting in any child or children William may have and leave surviving him.
To what relief is the complainant entitled, constitutes the remaining subject of inquiry. By a memorandum executed in 1842, and adopted as a codicil in May, 1843, the testator -directs that if his estate should accumulate beyond the amount required to pay the legacies and bequests in his will, his executors and trustees, “ in their discretion, shall appropriate a part of the surplus to Mrs. Eliza M. Mosher,” (the widow of his deceased son James and the grand-mother of the complainant,) “ for the benefit of her children until the estate shall be finally settled.” It appears a balance of $470.28 had ac *458 crued in the hands of the trustees in December, 1846, and this sum the Chancellor, upon the application of Mrs. Eliza M. Mosher, and with the consent of the trustees, directed by an order of May 28th, 1847, to be paid over to her, to be by her applied for the benefit of her children in conformity with the provisions of this codicil. In their answer to this application, the trustees expressed their desire to settle their account in the Court of Chancery, and to distribute the balance in their hands under the direction of that court. The Chancellor, in order that a sound discretion might be ^'exercised in determining what part of the surplus should be so applied, directed evidence to be taken showing the situation and necessities of the children to be benefited by such appropriation, and correctly decided that to any surplus not needed for these children, the accumulating clause in the will would attach and control its application until the period of final distribution should arrive. From this time the trustees continued to account in the Court of Chancery during its existence, and afterwards in the Superior Court for Baltimore City, to which the case was trafisferred, and to pay over to Mrs. Mosher, under the orders of these courts, balances from time to time accruing up to the time of filing the present bill of complaint.
The complainant is clearly not entitled to relief under this memorandum codicil, as being one of the parties for whose personal benefit the appropriation, authorized by that codicil, was to be made. That appropriation is to the “ children ” of Mrs. Mosher, and this word, in this connection, cannot be held to extend to and embrace grand-children. In this construction of the codicil we concur in the opinion expressed by the learned Judge of the Superior Court. Neither can the complainant claim in right of, or as deriving from his mother, any part of the surplus so appropriated, because it does not appear any such surplus accrued, to be distributed under the codicil, until after his mother’s death in August, 1846. Nor is he entitled to recover back, or to an account for, any portion of the surplus which has already been paid over under the several orders following the original order passed by the Chancellor. These orders were passed by courts of competent jurisdiction, and we must assume, in this proceeding, that the necessities and condition of the children were inquired into and au *459 thorized the several appropriations; and neither- Mrs. Mosher nor the trustees are responsible to the complainant for the moneys so received and appropriated.
But we are of opinion, upon the facts presented in this record, the complainant is entitled to an injunction to prevent *any further payments under this codicil, until the further order of the court. He has an interest under the will in the whole estate, with the accumulations of rents and profits, upon the death of the testator’s son William, whenever that event shall happen, and is, therefore, interested as against the codicil, that no more of the surplus shall be appropriated thereunder than the necessities and wants of the children of Mrs. Mosher may require. All the surplus income not needed for the other annuitants, nor required by this codicil, in the proper exercise of the discretion thereby reposed in the trustees, must be invested and accumulate for the benefit of those ultimately entitled to its possession and enjoyment. Thé complainant has, therefore, a clear right to insist that the discretion thus vested in the trustees shall not be abused to his prejudice, and that the money shall be applied as the codicil directs, and to the extent only which the necessities and condition of the children therein intended to be benefited, now demand. To this extent the relief asked must be granted and the bill sustained.
There is nothing in the proceedings in the Circuit Court of the District of Columbia, instituted by his father, precluding the complainant from obtaining relief, to the extent indicated, upon his present bill, because, if for no other reason, he was no party to those proceedings, and any decree which may have been passed therein could in no way affect his rights. Nor is it necessary for us to determine to what extent, if any, the father, as surviving husband, is or may be interested in the devise or legacy which, as we have decided, vested in his deceased wife under the will of her grand-father, because whatever may be his interest, it cannot interfere with the complainant’s right to the relief now granted, unless it should be held that all the personalty and all the accumulated rents and profits and income of both the realty and personalty, devolved upon him absolutely as surviving husband, a position which cannot be sustained, and which has not even been asserted in argument.
*460 *The decree dismissing the bill will be reversed and the cause remanded, in order that an injunction may issue in conformity with the views expressed in this opinion. The costs in both courts must be paid out of the fund in the hands of the trustees.

Decree reversed and cause remanded.