M!r. Justice Hagner
delivered the opinion of the court.
The bill in this case was filed by Mr. Snyder as trustee under the appointment of this court, for instructions as to the proper distribution of a bequest of $20,000 under the will of Colonel John Tayloe to his daughter, Virginia.
It avers that Virginia Tayloe died after executing a last will and testament; by which she bequeathed this $20,000 to her niece, Miss Lewis, who demands payment of the entire sum; but that the money is also claimed by the children and grandchildren of the sisters of the said Virginia, who deny the right of the said Virginia to bequeath the said property by her will, insisting that she was only given a life estate in the legacy by her father, and that upon her death, unmarried and childless, it devolved upon her surviving sisters and their children, under the proper construction of the will of Colonel John Tayloe.
The court below sustained the claim of the legatee, Virginia T. Lewis, and from this decree the present appeal is taken in behalf of the grandchildren of Mrs. Carter, one of *454 the sisters of Virginia Tayloe. The clause referred to is as follows:
“ I give and bequeath to my daughters, Catharine, Elizabeth M., Virginia and Anne 0. Tayloe, $20,000 apiece, to be invested in United States bank stock, or in government securities, which stock or securities I do hereby direct that my executors, hereinafter named, shall hold in trust for my said daughters respectively, and shall apply the dividends, interest or profits of said stock or securities to the use and benefit of my said daughters, Catharine, Elizabeth M., Virginia and Anne O. Tayloe, severally and respective!}'-, as the said dividends, interest or profits shall accrue; and from and after the intermarriage of any of them, then my said executors shall hold the said bank stock or other securities, belonging to said daughters so marrying, in trust for the following purposes; that is to say, in trust for the maintenance of her and her husband during their joint lives ; then in trust for the survivor of the said husband and wife during his or her life; and after the death of such survivor, then in trust for such issue as she may leave at the time of her death; and in case she shall die without leaving such issue, then in trust for her surviving sisters (my other daughters), and the issue of any deceased sister, such issue taking such share as the deceased sister, whom they represent, would have taken had she been alive to take; and it is my intention that the stock and securities, as also the dividends, interest or profits thereof, shall be utterly free from the power of control of the husbands of my said daughters.”
Then follows this provision ; “And the better to secure the payment of these my daughters’ portions, I do hereby direct that if the funds hereinafter particularly appropriated for the payment of debts and legacies shall be insufficient for the payment of debts and legacies, my estate generally must be charged to make up the deficiency to my said daughters.”
'Among the familiar principles of law laid down with reference to the interpretation of wills, which it will be *455 well to keep in mind in arriving at a correct construction in the present case áre these:
First. It makes no difference whatever, in construing such a bequest as that to Virginia Tayloe, that the property was left in the hands of trustees. The same rules of construction to determine the quality of her estate, whether for life or in fee, are equally applicable to estates placed in trust and those which are not, except so far as the creation of the trust may throw light upon the intention of the testator. Fairfax vs. Gunn, 60 Md., 55.
Again: It is a recognized principle that when a man has undertaken to make a will, it is presumed that his purpose was to dispose of his entire estate. If Colonel Tayloe intended to leave to his daughters only a life estate, and neither should have married, then the testator would have died intestate of the remainder of the $80,000 so bequeathed for life to his daughters; and this result would have been inconsistent with the legal presumption that the testator intended to dispose of the sum absolutely; and the will must manifest a clear intention that the daughters should have only a life estate, before the court would declare that the testator had only disposed of a life interest in the legacy, and had died intestate as to the remainder.
And, as to personal property, it is held that a gift of the produce of a fund is a gift of the fund itself, unless there be words of qualification restraining the extent and duration of the interest. And a bequest of personalty, without words of limitation or perpetuity, passes an absolute estate in the thing bequeathed, unless the contrary intention is plainly expressed or necessarily implied. Adamson vs. Armitage, 19 Ves., 416.
There are in this will several bequests, which, it is conced'd, give absolute interests, to which no words of limitation > are annexed. For example, the testator gives and bet; uoaths all his slaves, who were tradesmen and mechanics <>f every description, such as smiths, carpenters, joiners, wh- olwrights, ship carpenters, masons, shoemakers, etc., to equally divided among his sons, and all the plate *456 which belongs to the house in Washington wherein he resided, is directed to be equally divided, after his wife's death, among all the sons; and he also directs that all his stock of liquors and spirits on hand at his death should in the same manner be equally divided among all his sons; and these bequests, of course, passed absolute estates in the personalty so bequeathed without any words of limitation.
It is perfectly plain that this will was skilfully and artificially drawn. It is apparent from many items that the testator knew how to frame a devise or bequest for life in apt words ; thus, in proper terms, he gives to his wife an estate for life in what is given to her; the charge upon the estates of several of his sons, in favor of one of his’nieces, is properly limited to her life onlj ; and so in other instances ; all intimating clearly that he knew how to use words properly when he desired to create a life estate. And this circumstance is persuasive to suggest that he would have used similar plain words to limit the interest of his daughters in tlie fund, for life, if such had been bis purpose
The testator provided most munificently for his sons and grandson. His will enumerates upwards of thirty plantations, which are devised to them without exception. The bequests for the daughters are insignificant in comparison, and it would enhance the hardship, if the court should be compelled to cut down to life estates, the slender portions which from his abundance be doled out to his daughters.
Omitting the provision as to marriage from the clause under consideration, there remains not one word to limit the power of disposition on the part of the daughters, or to combat the idea that the testator contemplated the vesting of the property in their personal representatives in case of their intestacy, or their power to bequeath their shares by last will. The language preceding the words “and from and after the intermarriage of’ any of them,” etc., constitutes an ample gift of an absolute estate in the several sums of $20,000 apiece to each daughter, although it declared that the money should be invested in United States bank stock or government securities, and be held in trust “for my said *457 daughters respectively.” Those words as fully confer an absolute estate in the sums designated as the bequests before referred to do in the plate and the wines bequeathed by the testator.
The bequest is first, directly to the daughters, of “$20,000 apiece ” to be invested in stocks which he directs that his executors shall hold in trust for his said daughters respectively; applying “the dividends, interest or profits thereof to the benefit and use of the said daughters” severally and respectively, “as the said dividends, etc., shall accrue.”
Thus far he had made a sufficient bequest of the absolute interest in the fund for the daughters, while single. We have no more reason to suppose that he considered his daughters incompetent, so long as they remained unmarried to be trusted with $20,000 apiece, than that his sons were incompetent to hold the great estates he had devised to them. They were equally his children and as much deserving of their father’s bounty. But he naturally contemplated the probability of their marriage, and he knew that new relations would arise as to the management and ownership of the personalty, from the time they should marry.
From that moment, in the absence of express provisions to the contrary, the legacies would devolve upon their husbands, who might waste it and leave their wives penniless; hence, as a prudent father, he proceeded to impose such limitations upon the gift as should serve to protect it from this risk. The management was first committed to trustees; and this provision would have served as a sufficient safeguard against unwise investments by an unmarried daughter. But the solemnization of a marriage would create new difficulties which it was the sole purpose of the latter part of the clause to deal with; and the testator therefore added the words “ and from and after the intermarriage of either of them,” etc., to provide for this new condition of things.
That these added words were only intended to apply to the daughters after their respective marriages seems plain to us.
If none of the daughters should marry, it is self-evident *458 that the added words could never possibly apply. Everything in the added sentences is predicated only on the marriage of either of the daughters, who in that event only is to be affected by the new provision, since the provision as to husbands and children could have no application to her until marriage. If the entire clause had been four times expressed in the will, each repetition referring to only one daughter separately, how could the added words declaring what should happen from and after the marriage of Virginia hy possibility apply if Virginia should not marry at all ?
It may well be, as was argued in behalf of the appellants, that an unmarried daughter could not have disposed of her legacy at her pleasure during her life; because if she had applied to the trustees to transfer the property, they would have urged the possibility of her marriage and the consequent coming into force upon that event of the provisions contained in the added words. But this possibility could not interfere with her power of disposal by will, since such disposition could only operate in favor of her legatee after the possibility of marriage had disappeared, namely, after her death.
The cases cited by the appellants’ counsel in his careful brief were decided upon the particular phraseology of the will there under examination; and they afford no certain guide where the words are as different as they are in those cases from those before us.
No decision cited comes as near to the present case as that of Gulick vs. Gulick, 27 N. J. Eq., 498, which is singularly like the present case. • The fifth section of the will there considered reads as follows:
‘‘I give and bequeath to my daughter Abby Maria the sum of $10,000, to be placed out at interest, on bond and mortgage, so soon as my estate can be collected without sacrifice; the bonds and mortgages to be taken in the names of my executors or the survivor of them, in trust for my said daughter Abby Maria, and the interest to be paid annually to her by my said executors or the survivor of them, *459 and for her sole and separate use, and in nowise liable for the debts or subject to the control.of any man she may marry.
“ Should she marry and have a child or children, then after her death I give the said $10,000 to such child or children.”
The daughter died, never having married, and her personal representative claimed the fund. It was decided that the daughter died seized of an absolute estate against the contention that she was only entitled to a life estate. The court says:
“The testator, it is perceived, first provides for a gift of the fund itself and then the method of its enjoyment by the legatee. The last is equivalent to a gift of the interest of the fund. It is perceived, also, that until we meet the words ‘should she marry and have a child,’ etc., there is no limitation, express or implied, of the time of enjoyment of this interest. The rule is well established that a bequest of the income of personalty without limit as to time is equivalent to a gift of the property. And the rule applies whether given directly or through the intervention of trustees. This absolute bequest was subject to the concluding clause of the section, ‘ should she marry and have a child or children, then, after her death, I give the said $10,000 to such child or children.’ The legatee never married. The event, upon the happening of which the interest was limited over, never occurred. The rule, therefore, governs that where an absolute gift is made in the first instance, followed by a limitation over on the death of the first taker, the absolute gift is not defeated unless the gift over takes effect.
“ Construing this section as an absolute bequest, limited over upon the happening of an event which has failed, the executor of Abby Maria in entitled to the fund.”
This reasoning of the court is very applicable to the case at bar; and we conceive that under the proper construction of this clause, Virginia Tayloe died seized of an absolute estate in the legacy of $20,000, which she was competent to dispose of by her last will.
Being of the opinion that the decree below was correct, it is accordingly affirmed.