(Decided 28th March, 1883.)

---

LLEWELLYN C. FAIRFAX, PRISCILLA H. FAIRFAX and others *vs.* STEWART BROWN, and ARTHUR GEORGE BROWN, TRUSTEES, and others.    JOHN P. GUNN and SALLIE O. GUNN, his Wife *vs.* SAME.

*Testamentary Construction—Rules applicable to Estates devised in Trust, and those which are not, in determining whether the Devise is for life or in fee—Act of 1825, ch. 119—Vested and Contingent Estates—Case where a Contingency provided for was held to refer to the Time when the Estate first vested in possession.*

Where a devise was to trustees for the use and benefit of two of the testator's daughters, without any words of limitation or perpetuity, it was HELD:

1st. That it made no difference whatever, in construing the devise, that the property was left in the hands of trustees. The same rules of construction to determine the quality of the estate, whether for life, or in fee, are applicable to estates placed in trust and those which are not, except so far as the creation of the trust may throw light upon the intention of the testator.

2nd. That since the Act of 1825, ch. 119, a general devise in which words of limitation or perpetuity are omitted, will pass the whole interest of the testator, upon the assumption that he so intended. That assumed intention is however liable to be controlled by evidence of a contrary intention found in the will.

3rd. That there being no devise over of the property, it was not to be presumed that the testator intended to die intestate, and the

Fairfax, *et al.* *vs.* Brown, *et al.*   Gunn and Wife *vs.* Same.

will must clearly manifest an intention to pass only a life estate, before his children could be deprived of the fee.

4th. That such intention was not manifested by a provision in the will, by which only a fixed portion of the annual income was to be paid to the daughters, and the residue was to be invested by the trustees, and the annual income from such investments paid over by them to the daughters.

By his will the testator gave the bulk of his estate to his wife for life, and at her death, after giving certain portions to his sons, he devised all the residue of his property and estate to trustees for the benefit of his daughters, without words of limitation or perpetuity. He made a codicil to his will in the following words: " It is my will and desire, and I hereby direct, that in the event of the death of either of my children without lawful issue living at the time of his or her death, that his or her whole share or interest of or in my estate and property, *shall revert and become a part of my estate, to be distributed and inherited among and by my surviving children*, equally, but in the event of such issue, said deceased child's part or share of my estate to go to and be held in trust for the only use and benefit of said issue." HELD :

1st. That the will taken by itself without reference to the codicil gave to the testator's daughters an estate in fee.

2nd. That as by the will the testator had given his children a vested remainder in fee, which vested at his death, the possession whereof was postponed until the death of his wife, (the tenant for life,) the only effect of the codicil was to postpone the vesting of the estate to the period of the final distribution which was to take place at the death of his wife, and not longer.

3rd. That the testator meant and intended, that if any of his children died *before they came into possession* of their property, without issue, then his or her share should be equally divided among the survivors. If the one so dying did leave issue, then such issue should have it.

The testator left four children, Reginald, Francis, Harriet and Sarah. All of them survived their mother. Subsequent to her death, Francis died without issue, Reginald died leaving issue, and then Harriet died intestate and without issue. HELD :

That Harriet, having survived her mother, took a vested estate in fee at the death of her mother, and upon her dying intestate and without issue, her estate was to be equally divided between her

sister Sarah and the heirs and representatives of her brother Reginald; the trust on Harriet's interest having ended at her death.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The clause of the will of the testator, by which the residue of his estate was given in trust for his two daughters is as follows:

"And secondly. That the said persons or parties aforenamed, as trustees in this behalf, and the successors, survivors or acting one or more of them, shall hold all the rest and residue of my said property and estate, and every part thereof not hereinbefore specially devised and disposed of, in trust for the joint and equal benefit of my daughters, Harriet N. Wright and Sarah O. Wright, and shall pay to each of my said daughters, out of the proceeds thereof, the sum of five hundred dollars a year, in quarterly payments, for which payments well and truly made, the receipt of my said daughters for their respective share or part of said five hundred dollars a year each, shall alone be sufficient acquittance to my said trustees or either of them. In this devise of a part and portion of my property and estate, in trust for my two daughters, Harriet and Sarah, it is my will and desire, and I do so order and direct, that the said trustees and their successors, shall hold all my property and estate so devised to them, for the sole use and benefit of my said daughters, equally and respectively, and in an especial manner, I will and direct that the portion or share of my property and estate, and the proceeds thereof, to which my said daughters Harriet and Sarah, and either of them, are or may become entitled under this my will, and under the trust herein created for their benefit, shall not be subject or liable in any manner or degree to any claim, right, power or control of any one claiming under them, or in their name, or of any husband either of them may have, nor be liable for any debts, con-

tracts or engagements, any such husband may have or may make, either before or after marriage with my said daughters or either of them, and the receipt and acknowledgment of my said daughters and either of them, whether single or married, shall alone be good proof and acquittance to their or her trustees or trustee, for the portion and share of the proceeds of my estate, to which my said daughters and either of them, are or may become entitled under this my will, and under the devise in trust herein created for their benefit.

"And it is further my will and desire, and I do so order and direct, that all the income and proceeds of my property and estate, as devised above, for the use and benefit of my said daughters, over and beyond the sum of five hundred dollars a year, herein directed to be paid to each of my said daughters by the above named trustees or their successors, shall be invested by said trustees in city stock, State stock, or United States stock, or according to the best of their judgment, for the benefit of my said daughters, and all interest accruing on said investment or investments shall be paid to my said daughters semi-annually, and in equal proportion to my said daughters, in addition to the five hundred dollars a year, hereinbefore directed to be paid to them quarterly by said trustees or their successors."

A second codicil to the will is set forth in the opinion of the Court.

The causes were argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*J. Alexander Preston,* and *I. Nevett Steele,* for the appellants, Fairfax and others.

*Frederick W. Brune,* for Mrs. Sallie O. Gunn.

*Arthur George Brown,* for the trustees.

STONE, J., delivered the opinion of the Court.

In this case we are called upon to construe the will and codicil of the late Dr. Thomas H. Wright of Baltimore. The facts necessary to a proper understanding of the question before us are few and simple.   Dr. Wright died in 1855, having first duly executed the will and codicil hereinafter mentioned.   He left surviving him his wife, Mary F. Wright, and four children, Reginald N. Wright, Francis R. Wright, Harriet N. Wright, and Sallie O. Wright.   His wife, Mary F. Wright, subsequently died, leaving all the above named children her survivors. Francis R. Wright died after his mother, intestate and without issue.   Reginald also died after the death of the mother, leaving descendants who are parties to this suit. Harriet N. Wright has recently died intestate, and without issue, leaving her sister Sallie O. Wright, now Mrs. Gunn, surviving her.   The distribution of the estate of Harriet is the question immediately involved in this appeal.   Her sister, Mrs. Gunn, claiming that under the will and codicil of her father, Harriet took only a life estate with contingent remainder to her children, if she had any, and if she died without issue, then she, Mrs. Gunn, was entitled as the only surviving child of her father, to the whole of Harriet's property.   The heirs of Reginald however insist that Harriet took under the will and codicil a fee simple estate, and upon her dying intestate and without issue, her property is to be equally divided between the heirs of Reginald and Mrs. Gunn.

In all the vast number of wills almost daily brought in controversy, hardly any two are couched precisely in the same identical terms.   As the object of the Court is, not to make a will for the testator, and not to determine what he ought to have done, but to find out what he did intend, they are forced to look into, and carefully examine the language used in each will taken as a whole, and to examine the surrounding condition of affairs as far as appli-

cable to the will, and from them deduce the real intention of the testator, which is the cardinal point aimed at. Some of the rules of construction both judicial and legislative, have by long experience, been found useful, and will aid us in the case before us.

The principal difficulty in this case arises upon the second codicil to the will. The will itself was executed on 22nd February, 1848, and the codicil on the 28th of June, 1849, more than a year after the will, and we will first examine the will taken by itself, and see, if we can, what was the intention of the testator as evidenced by the will standing alone, and then determine how far that intention was changed or modified by the second codicil.

It makes no difference whatever in construing the devise to Harriet that the property was left in the hands of trustees. The same rules of construction to determine the quality of her estate, whether for life or in fee, are equally applicable to estates placed in trust, and those which are not, except so far as the creation of the trust may throw light upon the intention of the testator.

By the will itself, independent of the codicil, the testator gave the bulk of his estate to his wife Mary for life, and at her death, after giving certain portions to his sons, he devised all the *rest and residue* of his *property and estate* to trustees for the benefit of his daughters.

Since the Act of 1825, ch. 119, a general devise in which words of limitation or perpetuity are omitted, will pass the whole interest of the testator upon the assumption that he so intended; that assumed intention is, however, liable to be controlled by evidence of a contrary intention found in the will. *Hammond vs. Hammond*, 8 *Gill & Johns.*, 436.

This being a general devise of the whole residue of his estate, without any words of limitation or perpetuity, the devisees will take the entire and absolute interest of the

testator, unless it shall appear that the testator intended otherwise.   There is no devise over of this property, and as it is not to be presumed that the testator intended to die intestate of this portion of his estate, the will must clearly manifest an intention to pass only a life estate before his children can be deprived of the fee.

It is insisted in behalf of Mrs. Gunn, the surviving sister of Harriet, that such intention is manifested by that portion of the will which limits and restricts the *annual expenditure* by his daughters of the income of their property.   In this view we cannot concur.

Estates in fee are devisable and descendible.   He that hath an estate, that he can will to whom he pleases, or if he make no will, that will descend to his heirs at law, assuredly hath a fee.   Descent and the power of devising are two important requisites of such an estate.   To reduce it to a less estate some restriction must be imposed on these important privileges.   Upon a careful analysis of this will we can find no restriction or limitation upon the power to devise, or any direction as to the descent of the property at all inconsistent with absolute estates in the daughters.

It appears to have been the primary object of Dr. Wright in the creation of the trust to preserve the whole property for the sole use and benefit of his daughters, and he so expressly declares.   He did not wish their husbands, if they ever married, to have any control whatever over the property, or the income from it, and to effectuate this, he provided that the trustees must deal exclusively with the daughters in paying over to them the income.   His solicitude for his daughters goes further, and he limits and restricts the expenditure of their income.   It will be observed that they get the benefit of the *whole income* but only in the manner pointed out by their father.   He seems to have looked forward to the probable marriage of his daughters, and to have made this provision to meet

the increase of expenses necessarily attendant upon an increase of family.   The older the daughters grew, the larger the amount of their income which they were at liberty to spend, would be.   Thus supposing at the death of her mother the income of Harriet amounted to $2000 per annum (and we infer from the statements of counsel that such was the proximate amount) for the first year she would only be at liberty to spend $500.   If however she lived twenty years, and the trustees regularly invested the balance at 6 per cent. at the end of the twenty years the income that she could spend would be $2200 per annum, and this amount would be increased the longer she lived.   The testator only prescribed a mode of expenditure of her income for his daughter which the owner of the fee often follows himself, that is, only to spend a part of his income and invest the residue in safe securities.   Such a course is the only safe and prudent one for those who have incomes in excess of their reasonable wants.   It is a common practice where the income of the estate is large for the testator to limit the expenditure during minority, and sometimes longer, in a fee simple devise, and such restriction has never been held to change the character of the devise.

Every argument that can possibly be urged to show that a limitation of the expenditure of the income is inconsistent with a fee simple estate, applies with greater force when applied to its incompatibility with a life estate. The main and distinguishing incident of a tenancy for life is the use and benefit of the income of the estate, and any restriction upon that touches more directly upon its distinguishing feature.

In addition to this we find by an examination of the other parts of this will, that where the testator intended to give an estate for life, he used apt and proper terms to carry out his intention.   We are, therefore, of opinion that the will taken by itself and without reference to the

second codicil gave to his daughters an estate in fee. The other and the more important question is what effect has this codicil upon the will, and does it change the nature of the estates given to the daughters, or reduce what standing alone, the will made estates in fee, to estates for life?

The second codicil is as follows:

"It is my will and desire, and I hereby direct, that in the event of the death of either of my children, without lawful issue living at the time of his or her death, that his or her whole share or interest of, or in, my estate and property, *shall revert and become a part of my estate, to be distributed and inherited among and by my surviving children* equally, but in the event of such issue, said deceased child's part or share of my estate to go to and be held in trust for the only use and benefit of said issue."

The will and codicil must be construed as one instrument, and effect must, if possible, be given to every part of it. It will be observed that this codicil does not, in terms, revoke, alter or change any part of that will. On the contrary, the testator declares in the attestation of the codicil that he then and there *republishes* his will. If the codicil does make a change in the will, it must be because it is inconsistent with it. If the testator had intended to revoke or alter any part of his will, it is to be presumed that he would have said so. Taking his silence on that point, and his republication of the will at the time of the execution of the codicil, we hardly think the testator could have supposed he made any change in the will. The more probable supposition is that he only supposed that by the codicil he provided for a contingency which he had not provided for in the will, and that was *all* the effect he intended the codicil to have. Still, if the codicil is clearly repugnant to and inconsistent with any part of the will, by the established canons of construction, the codicil must prevail. Whether there is such repugnancy between the will and codicil, as will work a change in the former, we will next consider.

The codicil includes all the children of Dr. Wright, and applies equally to every kind and description of property devised to his children.   There is no distinction whatever made between the sons and the daughters, and no difference made between the property given immediately upon his death and that which he gave after the termination of the life estate of his wife.   The words of the codicil being "his or her *whole* share or interest of or in my estate and property."   In the will he had given several legacies to his sons absolutely, and before any legacy to his wife for life; all such legacies were unquestionably absolute.   By the codicil he provides that if either of his children died without issue living at the time of his or her death, that "his or her share shall revert, and become a part of my estate, to be distributed and inherited among my surviving children equally."   If, by the period of the death of either of his children, the testator meant an indefinite period, that is to say whenever that death should occur, without leaving a living issue, then none of the children of Dr. Wright took a vested interest in any of his property devised to them, but only a life estate with a contingent remainder over.   Such a construction would make the codicil a short and imperfectly drawn instrument, and reverse and change the most important provisions of a long and carefully drawn will.   We cannot think such a construction warranted, or that such was the intention of the testator.   If, however, he had in his mind a fixed period before which such death was to occur, then the codicil is in accord with the will, and only provided for a contingency which the will did not.

For a period of perhaps two hundred years the English Courts have shown a strong disposition to refer the words of survivorship used in a will, to some definite period. In the earlier English cases, the Courts almost uniformly held that period to be the death of the testator.   Even in cases where there was an intermediate estate.   In the

later English cases, they have shown an equally decided inclination to refer the period of survivorship to the period of the termination of the intermediate or life estate, wherever it can be consistently done.   But wherever the words of the will would warrant the construction, they have uniformly construed. the words of survivorship to refer to one or the other of these periods, and not to the death of the legatee, whenever it might occur.

The principal reason assigned for these rules of construction, is the policy of the law that favors the vesting of estates, at the earliest practicable time, and the deficiency and inaccuracy of expression so often found in testamentary dispositions, and the presumption that the testator did not intend to deprive the descendants, of any of his children who might die before the termination of the life estate, of the benefits of his property.

In order to carry out these views these Courts have, from time to time laid down some general rules.   Some of these, perhaps, were laid down too broadly and others too narrow.   An instance of the former may be found in *Edwards vs. Edwards,* 15 *Beavan,* 357, and of the latter in *O'Mahoney vs. Burdette, Law Reports,* 7 *H. L.,* 388. But we are not driven to the necessity of deciding between these cases, as our Court has well laid down the general rule applicable to cases of this kind in *Tayloe vs. Mosher,* 29 *Md.,* 456, in which the Court says:

" The general rule is that the law favors the vesting of estates, and to make an estate contingent, it *must appear* from the language used and the nature and circumstances of the case, that the time of payment was made the substance of the gift, and that the testator meant that time as the period of vesting.   Estates will be held to be vested, wherever it can fairly be done, without doing violence to the language of the will, and to make them contingent, there must be plain expressions to that effect, or such intent must be so plainly inferrible from the terms used as to leave no room for construction."

OCTOBER TERM, 1882.        61

Fairfax, *et al. vs.* Brown, *et al.*  Gunn and Wife *vs.* Same.

In furtherance of these views we find the case of *Hammett vs. Hammett,* decided in 43 *Md.,* 307.  In that case the testator gave half his property to his widow during her widowhood and further provided that if she married again, " I devise the same to my two children equally, *and should one of them die* the property to go to the survivor."  The widow did marry again, and the two sons survived that event, and the Court held, that the estate became vested in the children on the marriage of the widow, and that the terms, *should one of them die* meant death before the termination of the estate of the widow. In the opinion the Court, says, " If we should select the contingency that he referred to the death of his children, whenever that might occur, such construction would confine the estate given to the children to a life interest in the property.  The testator having given them by the first words a fee simple, it is not a fair presumption that he intended to reduce that estate, should one or both be alive when the contingency happened."

With these general principles for our guide, and upon a careful examination of the will and codicil, and the surrounding circumstances, we have no difficulty in arriving at a conclusion as to the intent of the testator in making this second codicil.  After giving, as we have above said, an estate in fee to his children, the natural and primary objects of a parent's bounty, it would not be a fair presumption that he intended to reduce the estate to an estate for life, if the terms used were of dubious and uncertain meaning.  But we cannot think there is much uncertainty in the terms therein used.  If the language " that his or her whole share or interest in my estate and property shall revert and become *a part of my estate to be distributed and inherited among and by my surviving children equally,"* means anything, it must mean that such share or interest, must revert and become a part of the testator's estate, while he had an estate for distri-

bution. When his whole estate was finally divided and distributed he had no longer an estate for such share to *become a part of.*

If by the death of any of his children, *whenever that death might occur,* and such death did happen after the death of his wife, the tenant for life of the major part of his property, and his sole executrix, who was to make such distributions?

It was a fair presumption that the children would outlive their mother, and we cannot suppose the testator contemplated a succession of administrators *d. b. n., c. t. a.,* on his estate, for the purpose of making a new distribution of the personalty at the death of each of his children, who might die without issue after their mother; or a succession of commissions to be issued to divide *as a part of his estate,* the realty that he had devised to a child so dying. Yet such would be the necessary result of the construction contended for by the appellees.

By such construction, although any child might have married, and had a large family of children, still his or her share could never vest until his or her death, as there is always a possibility of the parent surviving all the children. In the will itself, Dr. Wright many times uses the expression "at and after the death of his (or her) mother, and *not till then,*" in giving the different legacies. That was the period that he fixed upon as the final distribution of his estate. The codicil also provides for the death of a child leaving issue, and says that the "deceased child's part or share of *my estate shall go* to, and be held in trust for, the only use and benefit of said issue." The general intent of his whole will and codicil was equally to benefit his children and grandchildren. This general intent should be carried out wherever it can be done without violence to the language used. This general intent would be manifestly defeated by the appel-

Fairfax, *et al. vs.* Brown, *et al.*  Gunn and Wife *vs.* Same.

lees' construction, which would give to Mrs. Gunn and her children the whole benefit of the estate of Harriet, to the entire exclusion of the children of his son Reginald.

As by the will the testator had given his children a vested remainder in fee, which vested at his death, but possession thereof was postponed until the death of the tenant for life, we are of opinion, that the only effect of the codicil was to postpone the vesting of the estate to the period of the final distribution which was to take place at the death of his wife Mary and not longer. That the testator meant and intended that if any of his children died *before they came into possession* of their property, without issue, then his or her share must be equally divided among the survivors, if the one so dying did leave issue, then such issue should have it. That Harriet having survived her mother took a vested estate in fee at the death of the mother, and upon Harriet's dying intestate and without issue, her estate is to be equally divided between Mrs. Gunn, and the heirs and representatives of her brother Reginald, the trust on Harriet's interest having ended at her death. The decree of the Court below will be reversed and the cause remanded, in order that the property may be distributed in accordance with the construction we have placed upon the will in this opinion. As this opinion disposes of the questions raised upon Mrs. Gunn's appeal, her appeal will be dismissed. The costs in both cases to be paid out of the estate of Harriet N. Wright.

*Decree reversed, and*
*cause remanded.*

(Decided 28th March, 1883.)