# WELLFORD *v.* SNYDER.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 105. Argued December 5, 8, 9, 1890. — Decided December 22, 1890.

A testator bequeathed to four daughters the sum of $20,000 apiece, to be invested in public securites and held in trust by his executors for his said daughters respectively, and the income, as it accrued, applied to their several use and benefit; and directed that " from and after the intermarriage of any of them," the executors should hold the securities " belonging to the said daughter so marrying, in trust for the following purposes," namely, for the maintenance of her and her husband and the survivor of them for life, and after the death of both " for such issue as she may leave at the time of her death; and in case she shall die without leaving such issue," then for her surviving sisters and the issue of any deceased sister; and declared his intention that both principal and income should be free from the control of any husband; " and the better to secure the payment of these my daughters' fortunes," directed that, if a fund appropriated to the payment of debts and legacies should be insufficient, his whole estate should be charged " to make up the deficiency to my said daughters." *Held*, that the principal of the sum bequeathed to a daughter, who never married, vested in her absolutely, and passed by her will.

THIS was a bill in equity, in the nature of a bill of inter-pleader, for the construction of the will, dated July 1, 1824, of John Tayloe, by which, after providing for his wife, giving an annuity of $1200 to a daughter-in-law, making a devise to a grandson, and devising and bequeathing the greater part of his lands and personal property to his six sons, he provided for his daughters as follows:

"Having, at the time of the intermarriage of my daughter Mrs. Henrietta Hill Key, settled upon her ten thousand dollars, I give and bequeath to the said Henrietta ten thousand dollars more to be settled upon her, to her own separate use during her life, and after her death upon her children and their descendants. I wish however to be taken, as a part of the ten thousand dollars now bequeathed, about fifteen hundred and seventy-two dollars ninety and a half cents, which I paid on account of her husband a short time since, and for which a settlement of slaves has already been made upon her. And also any other sums of money which I have heretofore paid, or may hereafter pay or become liable for on account of her said husband. These sums are to form a part of the ten thousand dollars hereby directed to be settled, and are not to be taken in addition thereto.

"I give and bequeath to my daughters Catharine, Elizabeth M., Virginia and Anne O. Tayloe twenty thousand dollars apiece, to be vested in United States Bank stock or in government securities, which stock or securities I do hereby direct that my executors hereinafter named shall hold in trust for my said daughters respectively, and shall apply the dividends, interest or profits of the said stock or securities to the use and benefit of my said daughters Catharine, Elizabeth M., Virginia and Anne O. Tayloe severally and respectively, as the said dividends, interest and profits shall accrue; and from and after the intermarriage of any of them, then my said executors shall hold the said bank stock or other securities belonging to the said daughter so marrying, in trust for the following purposes, that is to say, in trust for the maintenance of her and her husband during their joint lives, then in trust for the survivor of the said husband and wife during his or her life, and after the

death of such survivor, then in trust for such issue as she may leave at the time of her death. And in case she shall die without leaving such issue, then in trust for her surviving sisters (my other daughters) and the issue of any deceased sister — such issue taking such share as the deceased sister whom they represent would have taken, had she been alive to take. And it is my intention that the said stock and securities, as also the dividends, interest or profits thereof, shall be utterly free from the power or control of the husbands of my said daughters. And the better to secure the payment of these my daughters' fortunes, I do hereby direct that, if the funds hereinafter particularly appropriated for the payment of debts and legacies shall be insufficient for payment of debts and legacies, my estate generally must be charged to make up the deficiency to my said daughters."

He then set apart, as a fund for the payment of debts and legacies, certain real and personal estate, and all the residue of his estate of every kind not specifically devised or bequeathed; and gave to his sons any surplus of this fund remaining after payment of debts and legacies.

By a codicil, dated March 4, 1825, he provided as follows: "James Baker, Esq., having intermarried with my daughter Catharine, I have given him, in part of the fortune intended to be bequeathed to my said daughter, the sum of five thousand dollars, and my said son-in-law having expressed a wish that all the rest of the fortune intended for his said wife should be settled upon her, I have annexed this codicil for the purpose of carrying that wish into effect, and do hereby declare that all estate and interest whatsoever bequeathed by my said will to my said daughter Catharine (except the five thousand dollars given as aforesaid in part thereof) shall be taken and received to be in trust to my said daughter Catharine to her separate use and to her representatives, as designated and limited in that clause of my will in which I have made provision for my daughters, it being my intention that no further part of the said Catharine's fortune shall be enjoyed by the said James Baker, but as the separate estate of his wife."

The will and its codicils were admitted to probate March 14, 1828.

The case was set down for hearing on bill and answers, and was as follows: John Tayloe's daughters Catharine, Elizabeth M. and Anne O. married and died, leaving children or grandchildren. His daughter Virginia died unmarried, leaving a will by which she bequeathed the sum of $20,000, bequeathed to her by her father, to a daughter of Anne O. The question presented to the court was whether by the will of John Tayloe this sum vested in his daughter Virginia so as to pass by her will, as her legatee and administrator contended; or, as contended by the grandchildren of Elizabeth M., went, upon the death of Virginia unmarried and without issue, to her sisters or their issue.

The court entered a decree in favor of Virginia Tayloe's legatee. 5 Mackey, 443. The grandchildren of Elizabeth M. appealed to the court.

*Mr. Leigh Robinson* for appellants cited: *Sheets' Estate*, 52 Penn. St. 257; *Urich's Appeal*, 86 Penn. St. 386; *Terry* v. *Wiggins*, 47 N. Y. 512; *Bell* v. *Warn*, 4 Hun, 406; *Collier* v. *Grimesey*, 36 Ohio St. 17, 22; *Baxter* v. *Bowyer*, 19 Ohio St. 490; *Smith* v. *Bell*, 6 Pet. 68; *Lucas* v. *Lockhart*, 10 Sm. & Marsh. 466; *S. C.* 48 Am. Dec. 766; *Woodruff* v. *Woodruff*, 32 Georgia, 358; *Barrus* v. *Kirkland*, 8 Gray, 514; *Butler* v. *Gray*, L. R. 5 Ch. 26; *Noe* v. *Miller*, 31 N. J. Eq. 234; *Dean* v. *Hart*, 62 Alabama, 308; *Pillow* v. *Wade*, 31 Arkansas, 678; *Kelly* v. *Bronson*, 26 Minnesota, 359; *O'Neall* v. *Boozer*, 4 Rich. Eq. 22; *Keith* v, *Perry*, 1 Dessaus. 353; *Roberts* v. *Watson*, 4 Jones, Law, 319; *Rose* v. *McHose*, 26 Missouri, 590; *Roberts* v. *Moseley*, 51 Missouri, 282; *Hanson* v. *Worthington*, 12 Maryland, 418; *Bentley* v. *Kauffman*, 86 Penn. St. 99; *Prewett* v. *Land*, 36 Mississippi, 495; *Blann* v. *Bell*, 5 DeG. & Sm. 658; *Innes* v. *Mitchell*, 6 Ves. 464; *Wetherell* v. *Wetherell*, 4 Giff. 51; *S. C.* 1 DeG. J. & S. 134; *Hamilton* v. *Lloyd*, 2 Ves. Jr. 416; *Brandon* v. *Robinson*, 18 Ves. 429; *Dick* v. *Pitchford*, 1 Dev. & Bat. Eq. 480; *Havens* v. *Healy*, 15 Barb. 296; *Akers* v. *Akers*, 23 N. J. Eq, 26; *Leggett* v. *Perkins*, 2 Comstock, 297; *Fales* v. *Currier*, 55 N. H. 392; *Bain* v. *Lescher*, 11 Sim. 397; *Newman* v. *Night-*

*ingale*, 1 Cox Ch. 341; *Hollister* v. *Shaw*, 46 Connecticut, 248; *Hatfield* v. *Sohier*, 114 Mass. 48; *Varley* v. *Winn*, 2 K. & J. 700; *Mackinnon* . v. *Peach*, 2 Keen, 555; *Home* v. *Pillans*, 2 Myl. & K. 15; *Salisbury* v. *Pelty*, 3 Hare, 86; *Edwards* v. *Edwards*, 15 Beavan, 357; *Whitney* v. *Whitney*, 45 N. H. 311; *Briggs* v. *Shaw*, 9 Allen, 516; *Montagu* v. *Nucella*, 1 Russ. 165; *Henry* v. *McLaughlin*, 1 Price, 264; *Galland* v. *Leonard*, 1 Swanston, 161; *Da Costa* v. *Keir*, 3 Russ. 360; *Johnston* v. *Antrobus*, 21 Beavan, 556; *Hoxsey* v. *Hoxsey*, 37 N. J. Eq. 21; *Burbank* v. *Whitney*, 24 Pick. 146; *S. C.* 35 Am. Dec. 312; *Frazer* v. *Peoria County Supervisors*, 74 Illinois, 282; *Reinders* v. *Koppelmann*, 68 Missouri, 482; . *Wead* v. *Gray*, 78 Missouri, 59; *Giles* v. *Little*, 104 U. S. 291; *Hagerty* v. *Albright*, 52 Penn. St. 274.

*Mr. William Pinkney Whyte* and *Mr. Henry Wise Garnett*, for appellees, cited: *Bowly* v. *Lammot*, 3 Harr. & Johns. 4; *Dougherty* v. *Mouett*, 5 G. & Johns. 459; *Chamberlain* v. *Owings*, 30 Maryland, 447; *Evans* v. *Iglehart*, 6 G. & Johns. 171; *Cassilly* v. *Meyer*, 4 Maryland, 1; *Edelin* v. *Mitchell*, 9 Gill, 161; *Page* v. *Leapingwell*, 18 Ves. 463; *Humphrey* v. *Humphrey*, 1 Sim. (N. S.) 536; *Kerry* v. *Derrick*, Cro. Jac. 104; *Manning* v. *Craig*, 3 N. J. Eq. 436; *S. C.* 41 Am. Dec. 739; *Collier* v. *Collier*, 3 Ohio St. 369; *Garret* v. *Rex*, 6 Watts, 14; *Pennsylvania Co.'s Appeal*, 83 Penn. St. 312; *Millard's Appeal*, 87 Penn. St. 457; *Elton* v. *Sheppard*, 1 Bro. Ch. 532; *Haig* v. *Swiney*, 1 Sim. & St. 487; *Adamson* v. *Armitage*, 19 Ves. 415; *Craft* v. *Snook*, 13 N. J. Eq. 121; *S. C.* 78 Am. Dec. 94; *Gulick* v. *Gulick*, 27 N. J. Eq. 498; *Earl* v. *Grim*, 1 Johns. Ch. 494; *McMichael* v. *Hunt*, 83 N. Car. 344; *Sproul's Appeal*, 105 Penn. St. 438; *Fairfax* v. *Brown*, 60 Maryland, 52; *Rawlings* v. *Jennings*, 13 Ves. 39; *Stretch* v. *Watkins*, 1 Madd. 253; *Clough* v. *Wynne*, 2 Madd. 188.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The decision of this case depends upon the true construction of that paragraph in John Tayloe's will by which he be-

queathes to four of his daughters the sum of $20,000 each. Neither the other paragraphs of the will, nor the codicils, appears to us to have any material bearing.

The testator begins by giving and bequeathing to each of these four daughters the sum of $20,000 apiece, to be invested in United States Bank stock or in government securities, which he directs his executors to hold in trust for his said daughters respectively, and to apply the income thereof, as it shall accrue, to their several use and benefit. Had the testator stopped here, there could be no doubt that the bequest to each daughter of the principal sum and of the income thereof vested in her the absolute property in that sum, which would pass by her will, or, if she died intestate, to her representatives. *Page* v. *Leapingwell*, 18 Ves. 463, 467 ; *Adamson* v. *Armitage*, 19 Ves. 416; *S. C.* Cooper, 283 ; *Garret* v. *Rex*, 6 Watts, 14 ; *Fairfax* v. *Brown*, 60 Maryland, 50. The last sentence of the paragraph, by which the testator, if a fund afterwards appropriated for the payment of debts and legacies shall be insufficient, charges his whole estate with the payment of " these my daughters' fortunes," and " to make up the deficiency to my said daughters," tends to the same conclusion.

The operation of such general words to pass an absolute title may doubtless be restricted by a context manifesting an intention that the legatee shall take an estate for life only. *Wetherell* v. *Wetherell*, 4 Giff. 51, and 1 DeG. J. & S. 134 ; *Sheet's Estate*, 52 Penn. St. 257. The real question, therefore, is how far the intermediate provisions, in the paragraph under consideration, restrict the effect of the general words of bequest to the four daughters.

. The testator introduces those provisions by directing that " from and after the intermarriage of any of them " his executors shall hold the stock or securities " belonging to the said daughter so marrying, in trust for the following purposes," expressed in three sentences : 1st. For the maintenance of her and her husband and the survivor of them for life, and after the death of both " for such issue as she may leave at the time of her death." 2d. " And in case she shall die without leaving such issue," then for her surviving sisters and the issue of any

deceased sister. 3d. The testator declares it to be his intention that both principal and income "shall be utterly free from the power or control of the husbands of my said daughters."

By the order and connection of these sentences, and by the natural and grammatical meaning of the words used, none of them apply to daughters who never marry. The preliminary supposition or postulate, that "from and after the intermarriage of any of them" the executors shall hold the stock or securities "belonging to the said daughter so marrying, in trust for the following purposes," underlies and attends all the provisions by which those purposes are defined. Of those provisions, as above classified, the first and the third, making mention of husbands, cannot possibly apply except to married daughters; and immediately after the last words of the first, by which upon the death of a married daughter and her husband her share is to go to "such issue as she may leave at the time of her death," follow the words, "And in case she shall die without leaving such issue," which define the event in which the second provision shall take effect. In this connection, the word "she" in the singular, and the words designating her issue, relate grammatically, as well as naturally, to the married daughter and her issue, just mentioned; and not to the four daughters, married or unmarried, and to issue of unmarried ones. The three provisions, whether viewed separately and according to the letter, or as a whole and according to the manifest spirit and intent, all have one aim, and one only, that the share of any married daughter (the income only being received by herself and her husband for life) shall never pass into the husband's ownership or control, but shall vest in her issue, if she leaves any, otherwise in the testator's other daughters or their issue.

The general design of the testator is manifest to give all his daughters equal portions; the provisions with regard to the shares of those who marry are not inconsistent with this design, but are intended to preserve the benefit of the bequest to the daughters and their children; and those provisions do not affect the absolute title of a daughter who never marries.

This conclusion is in accord with a long line of English deci-

sions of high authority in similar cases. *Whittell* v. *Dudin*, 2 Jac. & Walk. 279; *Hulme* v. *Hulme*, 9 Sim. 644; *Winckworth* v. *Winckworth*, 8 Beavan, 576; *Gompertz* v. *Gompertz*, 2 Phillips, 107; *Lassence* v. *Tierney*, 1 Macn. & Gord. 551; *S. C.* 2 Hall & Twells, 115; *Corbett's Trusts*, H. R. V. Johnson, 591; *Kellett* v. *Kellett*, L. R. 3 H. L. 160, 168, 169. See also *Gulick* v. *Gulick*, 10 C. E. Green, 324, and 12 C. E. Green, 498.

The court below, therefore, rightly held that the principal of the sum bequeathed to Virginia Tayloe, who never married, vested in her absolutely, and went to her legatee.

*Decree affirmed.*