MARTIN et al. v. FORT et al.

(Circuit Court of Appeals, Sixth Circuit. November 1, 1897.)

No. 463.

1. FEDERAL JURISDICTION—CITIZENSHIP—NECESSARY PARTIES.

S., a married woman, had a beneficial life interest in certain property held by a trustee, and a power of testamentary appointment. She conveyed the property to McW., and by will appointed it to complainants and E. *Held*, that if, under the laws of Tennessee, her interest was a mere life estate, complainants, being citizens of another state, could maintain a suit in the federal court in Tennessee to enforce their rights against the personal representative of the trustee, and McW., citizens of Tennessee,

without joining the personal representative of S., or the other appointee, being citizens of Tennessee.

**2. WILLS—BEQUEST OF PERSONALTY IN TRUST.**
A bequest of personalty to a trustee for the use and benefit of another, without words of restriction, vests the absolute property in the fund in the beneficiary.

**3. SAME—LIMITATION OVER.**
In a bequest of personal property to a trustee, words of limitation over are to be construed, if possible, in harmony with the general intent of the testator to give an absolute property to the beneficiary.

**4. WIFE'S SEPARATE ESTATE—POWER OF DISPOSITION.**
Under the former law of Tennessee, a married woman had no power during coverture to dispose of her separate estate except as provided by the instrument creating it; and, if no mode was provided, her power to dispose of it at all was doubtful.

**5. SAME.**
Under the Tennessee act of 1869–70 (Mill. & V. Code, § 3350), conferring upon married women the power of disposition of property settled for their separate use unless expressly withheld, the mere mention of one mode of disposition does not exclude others.

**6. SAME—STATUTORY PROVISIONS.**
The Tennessee act of 1869–70 (Mill. & V. Code, § 3350), relating to disposition of separate property by married women, applies to settlements made before as well as after its passage.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

This is an appeal from a decree of the circuit court for the Middle district of Tennessee dismissing the complainants' bill in equity on demurrer for nonjoinder of necessary parties. The bill was filed by Mrs. Carrie Martin and others, claiming, as appointees under the will of Susan M. Seat to a fund bequeathed under the will of Susan M. Seat's father, James Anderson, their shares of said fund against Fort, the administrator of S. B. Seat, the trustee and custodian of the fund named in the will of Anderson, and A. J. McWhirter and F. P. McWhirter, who, by a deed of conveyance from Susan M. Seat after S. B. Seat's death, acquired the legal title to all of the land and personalty held by S. B. Seat, either personally or as trustee. The circuit court held that the executor of Susan M. Seat was a necessary party complainant to the action. The complainants named were citizens of other states than Tennessee. The defendants named were citizens of that state. The executor of Susan M. Seat was also a citizen of Tennessee; hence the complainants declined to make the executor of Susan M. Seat a party, because it would oust the jurisdiction of the court; whereupon the court dismissed the bill, and this constitutes the error assigned.

A copy of the will of James Anderson is attached to the bill. It discloses that the testator had three sons and one married daughter, Susan M. Seat, and the clause of the will of importance in this controversy is as follows: "I wish my executors, who may now be in my debt, not to be charged with any interest on the same until the day that they qualify as my executors, from which time they will account to each other on settlement and division of my effects. This division will be between Samuel T. Anderson, Matthew Anderson, Susan M. Seat, and George W. Anderson, equal parts of the whole, after my own debts are paid. The part of my estate which is to go to my daughter, Susan M. Seat, I give and bequeath to her husband, Samuel B. Seat, as trustee, in trust to hold for her sole and separate use, to be free from debts, contracts, and engagements of her said husband, and at her death to go to such persons as she may, by writing in the nature of a last will and testament, appoint; such appointment to be witnessed by two subscribing witnesses. The said trustee shall not be required to give any security unless my daughter shall require it, and may invest the money and property in business or otherwise, and from time to time may invest in real estate or other property, with the power to

sell and make other investments in stocks, bonds, etc.; the intents being to give him absolute power and control for the purpose of this trust and the support of my said daughter." The bill avers that the division above directed was made, and that S. B. Seat. the husband of Susan M. Seat, accordingly received, as her trustee, a sum which, with interest unpaid, amounted to about $8,000, and that he died on February 3, 1893. He left no children, and all of the property in his name passed to his wife, Susan. A few days after his death, Mrs. Seat, by deed, conveyed to the defendants A. J. McWhirter and F. P. McWhirter all the property received from her husband, including land and personalty, in consideration of an agreement on their part to provide a home and income for her during life. Shortly after the conveyance, Mrs. Seat filed a bill in the state chancery court to set aside her conveyance to the McWhirters, on the ground that it was obtained by fraud. The chancery court set the deed aside, but the supreme court, on appeal, reversed the decree of the lower court, and dismissed the bill. 29 S. W. 220. Mrs. Seat died in December, 1895, testate, and by her will directed—First, the payment of her debts; second, the payment to Mrs. Sallie Ellis, Mrs. Carrie Martin, Miss Susie Anderson, and Lewis Anderson the sum of $7,500; and, third, the payment to Elizabeth and Mary Anderson, children of a deceased nephew of hers, $500 each. The fourth clause of her will was as follows: "All the balance of my estate, of every kind and character, including that portion of my father's estate willed to me, and taken by my husband, to be held for me under my father's will, and also including that portion of my brother Matt Anderson's personal property taken by my husband, and held by him in trust for me, I will to my nieces Mrs. Sallie Ellis, Mrs. Carrie Martin, and Miss Susie Anderson, and my nephew Lewis Anderson, equally, each to take one-fourth; the interests, however, of Mrs. Sallie Ellis and Mrs. Martin, to be their separate estates, free from the contracts, debts, etc., of their husbands, and that portion which they may receive under the second clause of this will to be also their separate estates." The bill avers that S. B. Seat's estate was insolvent, and that complainants had requested the administrator, Fort, to bring an action against the Mc-Whirters to recover assets for the payment of this trust debt of his intestate, but that he had refused to do so. Mrs. Sallie Ellis, one of the beneficiaries, was a citizen of Tennessee, and was not made a party to the bill. The defendants demurred to the bill on several grounds: First, that there was no equity in the bill; second, that the right of action, if any, was in Mrs. Seat's executor, who did not sue; third, that the only claim complainants had was against said executor; fourth, that, even if there was a right of action against S. B. Seat's administrator, there was none against the McWhirters; fifth, that Mrs. Sallie Ellis, who was a necessary party to the bill, had not been made a party. The circuit court sustained the demurrer, on the ground that the executor of Mrs. Seat, and Mrs. Sallie Ellis, were not made parties to the bill.

Leech & Savage, for appellants.
Vertrees & Vertrees, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). The theory of the complainants in framing the bill was that Mrs. Seat only took a life estate under the will of her father, James Anderson, in the trust fund provided for her, and a power of appointment upon her death, and that the complainants, by virtue of the terms of her will, were her appointees. If this is sound, then it is difficult to see what necessity there was for the presence of Mrs. Seat's executor as a party to the suit. Upon the proper exercise of the power of appointment, the appointees were legatees, not under Mrs. Seat's will, but under the will of her father, James Anderson, and they had no claim against

Mrs. Seat's estate or her executor. Again, assuming complainants' theory of their bill to be correct, each of them was entitled to a deter-minate share of the trust fund bequeathed to S. B. Seat, trustee, and might sue his personal representative to establish his right to a distributive share of the estate, and to enforce it; and it was not necessary to join in such an action other co-legatees as complainants, whose presence in the suit as parties would, because of their citizenship, oust the jurisdiction of the court. The causes of action by the legatees for their shares of the fund were several, and, although they might all have joined in one action, it was not necessary.

Payne v. Hook, 7 Wall. 425, was a bill in equity filed in the federal court by the complainant, as one of the distributees of an estate of an intestate, against the administrator and the sureties on his bond, to compel the payment of the share of the complainant. It was objected that the other distributees were not made parties to the bill. The supreme court, speaking by Mr. Justice Davis, met this objection as follows:

"But it is said the proper parties for a decree are not before the court, as the bill shows there are other distributees besides the complainant. It is undoubtedly true that all persons materially interested in the subject-matter of the suit should be made parties to it; but this rule, like all general rules, being founded in convenience, will yield, whenever it is necessary that it should yield, in order to accomplish the ends of justice. It will yield if the court is able to proceed to a decree, and do justice to the parties before it, without injury to absent persons, equally interested in the litigation, but who cannot conveniently be made parties to the suit. The necessity for the relaxation of the rule is more especially apparent in the courts of the United States, where oftentimes the enforcement of the rule would oust them of their jurisdiction, and deprive parties entitled to the interposition of a court of equity of any remedy whatever. The present case affords an ample illustration of this necessity. The complainant sues as one of the next of kin, and names the other distributees, who have the same common interest, without stating of what particular state they are citizens. It is fair to presume, in the absence of any averments to the contrary, that they are citizens of Missouri. If so, they could not be joined as plaintiffs, for that would take away the jurisdiction of the court; and why make them defendants when the controversy is not with them, but the administrator and his sureties? It can never be indispensable to make defendants of those against whom nothing is alleged and from whom no relief is asked. A court of equity adapts its decrees to the necessities of each case, and, should the present suit terminate in a decree against the defendants, it is easy to do substantial justice to all the parties in interest, and prevent a multiplicity of suits, by allowing the other distributees, either through a reference to a master, or by some other proper proceeding, to come in and share in the benefit of the litigation."

The case of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, fully recognizes the right of a legatee or creditor, who is not a citizen of the state of the decedent and his representative, to proceed in the United States court against such representative to establish his claim therein by judgment or decree against the representative, and only limits this right by holding that, where the estate of the decedent is being administered in a probate court, the federal court, after adjudging the validity and amount of the claim, must remit the complainant to the court having possession of the res for distribution. In the case at bar the property which it is sought to subject to the claim of the complainants is not in the custody of any court; and so here we do

not even have the difficulty presented and discussed in Byers v. McAuley.

The theory of the bill at bar against the McWhirters is that, as the McWhirters received all of the assets of the estate of S. B. Seat at a time when his administrator was under obligation, as trustee, to preserve a fund for future testamentary appointees of Mrs. Seat, those assets were impressed with a trust certainly not less sacred than if such appointees had been merely creditors of S. B. Seat; and, therefore, that the cestuis que trustent, after Mrs. Seat's death, may follow the assets into the McWhirters' hands, and compel a distribution through the administrator of S. B. Seat, also made a defendant; and that the McWhirters cannot rely upon Mrs. Seat's deed, if, as the bill assumes, she had only a life interest in the fund, with no power of disposition save by testamentary appointment. The case presented by the bill in this aspect is not unlike Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342. That case was a bill filed by a judgment creditor of one dying testate against his executor and the legatees under his will, to compel satisfaction of the judgment out of the assets distributed to the legatees. The decedent, before his death, was a citizen of Minnesota. Nearly all his property was in California. In the latter state ancillary administration proceedings had been had, the property there sold had been distributed, the debts there presented had been paid, and the executor in that state had been discharged. The complainant had not been a party to the California administration proceedings, but, after they had been closed, filed his bill. The court held that the assets distributed under the California proceedings, when brought into Minnesota, were impressed with a trust, which the complainant had a right to have administered for his benefit. The court, speaking by Mr. Justice Mathews, said:

"It is upon the ground of such a trust that the jurisdiction of courts of equity primarily rests in administration suits, and in creditors' bills brought against executors or administrators, or after distribution against legatees, for the purpose of charging them with a liability to apply the assets of the decedent to the payment of his debts. As a part of the ancient and original jurisdiction of courts of equity, it is vested, by the constitution of the United States and the laws of congress in pursuance thereof, in the federal courts, to be administered by the circuit courts in controversies arising between citizens of different states. It is the familiar and well-settled doctrine of this court that this jurisdiction is independent of that conferred by the states upon their own courts, and cannot be affected by any legislation except that of the United States. Suydam v. Broadnax, 14 Pet. 67; Hagan v. Walker, 14 How. 28; Bank v. Jolly, 18 How. 503; Hyde v. Stone, 20 How. 170; Green's Adm'x v. Creighton, 23 How. 90; Payne v. Hook, 7 Wall. 425, 430. In Payne v. Hook, ubi supra, the rule was declared in these words: 'We have repeatedly held that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. If legal remedies are sometimes modified to suit the changes in the laws of the states and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses, is subject to neither limitation nor restraint by state legislation, and is uniform throughout the different states of the Union.' The only qualification in the application of this principle is that the courts of the United States, in the exercise of their

jurisdiction over the parties, cannot seize or control property while in the custody of a court of the state. Williams v. Benedict, 8 How. 107; Youley v. Lavender, 21 Wall. 276; Freeman v. Howe, 24 How. 450. This exception does not apply in the present case, for the assets sought by this bill to be marshaled in favor of the complainant are not in the possession of any other court. They are in the hands of the defendants, impressed with a trust in favor of the complainant, a creditor of Gordon, and subject to the control of this court by reason of its jurisdiction over their persons."

See, also, Comstock v. Herron, 6 U. S. App. 626, 5 C. C. A. 206, and 55 Fed. 803.

It follows from the foregoing that, upon the theory of the bill as to the estate or interest of Mrs. Seat in the trust fund bequeathed by her father, it was not necessary to make either the executor of Mrs. Seat or the resident co-appointee of complainants a party to the bill, and that the McWhirters were properly made co-defendants with Seat's administrator. There was therefore no nonjoinder of necessary parties complainant, and no misjoinder of parties defendant, and to sustain a demurrer on either ground was error. This conclusion must lead to the reversal of the decree dismissing the bill, unless on the face of the bill no cause of action is stated. This depends on the question whether the theory of the bill that Mrs. Seat's interest in the trust fund bequeathed by her father was limited to her use of it for life, so that she had no right to transfer it absolutely to the McWhirters after her husband's death, is correct. We are of opinion that Mrs. Seat took one-fourth part of the estate of James Anderson absolutely, and that her interest was not limited therein to a mere life estate. The averments of the bill show that this provision for Mrs. Seat was a bequest of personalty, and we must then apply the rules usually applicable to such bequests in determining the extent of her interest in the fund bequeathed. It is well settled that the bequest of personalty to a trustee for the use and benefit of another, without words of restriction, vests the absolute property in the fund bequeathed in the beneficiary. Wellford v. Snyder, 137 U. S. 521, 526, 11 Sup. Ct. 183; Adamson v. Armitage, 19 Ves. 416; Garret v. Rex, 6 Watts, 14; Fairfax v. Brown, 60 Md. 50. And even words of limitation over are construed to be in harmony with the general intent of the testator to give an absolute property, if they can be reconciled with it. Kellett v. Kellett, L. R. 3 H. L. 160, 168, 169; Gulick v. Gulick's Ex'rs, 25 N. J. Eq. 324, 27 N. J. Eq. 498; Winckworth v. Winckworth, 8 Beav. 576; Hulme v. Hulme, 9 Sim. 644.

Even if there were no specific rule of interpretation to aid us, we should have no difficulty in reaching the same conclusion as to the testator's intention in this case. After referring to the settlement and division of his effects, the testator said: "This division will be between Samuel T. Anderson, Matthew Anderson, Susan M. Seat, and George W. Anderson, equal parts of the whole, after my own debts are paid." Here is the plainest declaration that the daughter was to share equally with the sons in the estate, and it is not disputed that the sons were to take the amounts given to them absolutely. The remainder of the will is taken up in providing how the part given to the daughter shall be held. The words following, to wit, "the part of my estate which is to go to my daughter," refer

back to the one-fourth equal share which he has already declared his intention to give her, and show, not that he is about to limit or cut down her interest in it, but only that her condition as a feme covert required a special provision for the mode in which it should be held; for he bequeaths this part already described to a trustee, to hold for her sole and separate use, to be free from the debts, contracts, and engagements of her husband, and gives the trustee complete power to invest and reinvest the fund or share thus given for her separate use. There is no limitation over in case of Mrs. Seat's failure to appoint by will, which we should certainly expect if she was only to take a life interest. There are no words expressly indicating the intention of the testator that her interest should be confined to enjoyment of the income during life, as there were in Deadrick v. Armor, 10 Humph. 596, Bradley v. Carnes, 94 Tenn. 27, 27 S. W. 1007, and McGavock v. Pugsley, 12 Heisk. 694, relied on by counsel for appellants. The provision giving Mrs. Seat power to appoint persons by will to take the property on her death finds an explanation in the state of the law of Tennessee, at the time the will of Anderson took effect, with reference to the power of married women to dispose of their separate estates during coverture, and is consistent with Mrs. Seat's taking an absolute and complete interest in the property bequeathed. By that law a married woman had no power during coverture to dispose of her estate given to her for her separate use except in the mode provided by the instrument creating the estate, and, if no mode was provided, it was doubtful whether she had any power of disposing of it at all, however absolute her interest in the property might be. Gray v. Robb, 4 Heisk. 77, 78; Young v. Young, 7 Cold. 461; Molloy v. Clapp, 2 Lea, 586, 591. The testator evidently wished to insure her testamentary power over her absolute estate, which without this provision she might not have had, had she remained covert until her death. Whenever she became discovert, however, her power of disposition became absolute. ·

This result and the reason for it are set forth succinctly by that learned equity judge, Chancellor Cooper, of Tennessee, in Harding v. Insurance Co., 2 Coop. Ch. 465, 469, as follows:

"It is an elementary principle that an absolute estate or beneficial interest carries with it, as an incident of property, the unlimited power of disposition, which cannot be taken away or impaired by any clause or proviso in the conveyance from a third person, nor, a fortiori, in a conveyance made by the grantor himself for his own benefit. Such a provision is simply void as to a person sui juris. Bouv. Inst. § 1698; Co. Litt. § 360, p. 223, a; Smith v. Bell, Mart. & Y. 302; Brandon v. Robinson, 18 Ves. 429; Dick v. Pitchford, 21 N. C. 486. The same principle has been extended to conveyances for the benefit of married women. Although restrictions upon their power of disposition may be good during coverture, and may even revive during a second coverture, yet, whenever they become discovert, the restriction ceases to be operative, and the power of disposition becomes absolute. Jones v. Salter, 2 Russ. & M. 208; Tullett v. Armstrong, 4 Mylne & C. 377; Beaufort v. Collier, 6 Humph. 492. The outstanding legal title in such cases, if it can be said to be outstanding, is only the dry title, and, even at law, will be held to be devested in support of the beneficial interest, without regard to time or possession. Marr v. Gilliam, 1 Cold. 498, 499, citing Aikin v. Smith, 1 Sneed, 304, and England v. Slade, 4 Term R. 682; Doe v. Sybourn, 7 Term R. 2. A fortiori will such an outstanding legal title avail nothing in equity."

See, also, Gray, Restr. Alien. Prop. §§ 140–142.

Indeed, Mrs. Seat's power of disposition would have become complete at the time when she made the deed to the McWhirters, even if her husband had then been in life. By the act of 1869–70 (section 3350, Mill. & V. Code) it was provided that, where property was settled upon a married woman to her separate use, she should have the same power of disposition as if she were a feme sole, unless the power of disposition was expressly withheld. Under the statute, the mere mention of one mode of disposition does not exclude others. Lightfoot v. Bass, 8 Lea, 350. The statute has been held to apply to settlements made before the statute, as well as to those after its passage. Molloy v. Clapp, 2 Lea, 586. Of course, the statute could not enlarge the estate previously vested, but it could enlarge the power of disposition of her separate estate by a married woman, limitations of which are not in the nature of vested rights, but are mere personal disabilities, that may be varied from time to time by the legislature in the exercise of that power which is usually called, for want of a more satisfactory description, the police power of the state.

It follows from the foregoing that, when Mr. Seat made the deed to the McWhirters, she owned absolutely the entire fund left to her by her father's will, and that she had full power to dispose of the same. By that deed, therefore, the validity of which, as between Mrs. Seat and all claiming under her, on one hand, and the McWhirters, on the other, has been conclusively adjudged in the decree dismissing the bill brought by Mrs. Seat in her lifetime against the McWhirters, Mrs. Seat and her legatees are estopped to claim that any of the property thereby conveyed is subject to a trust in her favor to pay what was received by her husband from her father's estate. The deed was, in effect, a release upon valuable consideration of all the property held by her husband, either in his own name or as trustee, and the fairness of it is not here open to investigation. The demurrer to the bill should have been sustained, not for nonjoinder of necessary parties, as held by the learned judge at the circuit, but because the bill failed on its merits. The decree dismissing the bill must therefore be affirmed, at the costs of the appellants.